**Reversed and Remanded and Opinion filed August 20, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-01093-CV

---

**GEORGE FLEMING AND FLEMING & ASSOCIATES, LLP, Appellants**

**V.**

**TAMMYLERN CURRY, RICHARD SZYMANSKI, ON BEHALF OF THE ESTATE OF MARION SZYMANSKI, EMILIE WHITEHEAD, CONNIE BOHANNON, AND LINDA SCOTT, Appellees**

---

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2008-65396-B**

---

## NO. 14-12-00300-CV

---

**GEORGE FLEMING AND FLEMING & ASSOCIATES, LLP, Appellants**

**V.**

**ALVAREZ, CAROLYN B., AMAN, MARIA, AMBROGI, ANA M., AMBROSE, DOLORES W., AMBURGY, DEBRA J., ANDERSON, DEBORAH J., ANDREA, RAMONA C., APPERSON, MERLE, ARAUJO,**

CARMELA, ASBRIDGE, JANICE J., ASHER, URSULA, AYLWARD, CHERYL, BAGLEY, TENA M., ABOULHOSN, WALEED J., ALBO, ELLEN, ALECK, VICTOR P., BAKER, JOHN W., BALLARD, MASON C., BARBER, BEATRICE M., BARNES, LOUISE, BARNES, WANDA M., BARTON, GLENDA S., BASSELL, PAMELA R., BAUER, IMOGENE, BEAVERS, CAROLE, BECERRA, LUZ M., BELLER, JOANNE, BENEDICT, KAREN S., BENZ, MONTE J., BINGHAM, TERRI A., BLAND, JUDITH E., BLANTON, LARRY E., BLANTON, LINDA A., BLENIS, JULIE, BOHANNAN, WEYLIN, BOSTON, FLORINE, BOTTOMLEY, JERRY, BOYNTON, KAREN L., BRACKENBURY, LANETTE S., BRADFIELD, KELLI L., BRADLEY, MELANIE A., BRAY, SHARON L., BREELAND, JOANNE P., BREWER, BETTY JO, BREWER, WENDY E., BRINKMAN, CYNTHIA L., BRISTER, PATRICIA P., BRITT, MARILYN G., BROWN, BILLIE B., BROWN, GLORIA J., BROWN, JOANN B., BROWN, RICHARD E., BROWNING, BEDRIE K., BROWNING, SUE E., BROWN-PRITCHARD, DENISE L., BRUSKIN, DAVID, BRYANT, TIMMY D., BUCHANAN, LLOYD D., CALDWELL, SHIRLEY J., CAMPBELL, ALVICHER, CARROLL, DONNA J., CARROLL, KATHLEEN MARIE, CHAVEZ, SHERL L., CHERRY, KATTIE S., CHOC, CYNTHIA D., CLARK, CAROLYN J., CLARKE, GAIL D., CLARY, SHERRI L., COLEMAN, LISA D., CONGER, LINDA S., CONWAY, REBECCA J., COOK, JOHN S., COPELAND, BETTY D., CRAIK, ROSE A., CRANFORD, CHARLOTTE L., CRIBARI, MARGARET, CROOK, JOYCE, CRUDUP, CAROLYN T., CRUM, JERRI A., CUNNINGHAM, GRACE A., CUNNINGHAM, KATHLEEN M., DARBOUZE, SOLIENNE, DAVIDSON, LINDA D., DAVIS, DEBRA L., DAVIS, PATRICIA A., DAVIS, PEGGY T., DAVITTO, JILL E., DELON, GERALDINE J., DEMARS, CAROLE, DEWITT, SANDRA K., DIBELLO, CATHY J., DIGGS, CARRIE C., DILLARD, GWENDOLYN E., DILLS, ROBERTA, DOBSON, BRENDA G., DODDS, FAYE, DOUGHERTY, LORRAINE A., DUKES, ROSE MARIE, DYKES, MICHAEL S., EASON, VICKIE A., ECKERT, RUTH E., EDME, FAQUINNTHA M., EDMONDS, ANITA G., EDWARDS, MARIAN, EGLEY, JUANITA L., EIGHME, VIRGINIA, EKELMAN, SUSAN E., EPPS, LOIS N., EPSTEIN, BRUCE R., ESCOBOSA, DEBORAH L., ESPOSITO, MARY ANN, ESTES, RUBY, EVANS, KATHY A., EYCHNER, MARJORIE, FAIN, CYNTHIA A., FARLEY, PATRICIA L., FARRUGGIA, DEBRA P., FAULKNER, SHAREL, FERGUSON, JENITA A., FERLISE, CONNIE A., FINNEY, BERNADETTE, FISCHER, MARION A., FLORES, DIANE P., FLORES, ESTELLA A., FLYNN, CAROLYN J., FOX, BETTY L., FRANK, HAROLD

R., FULLER, BETTYE P., GANN, MICHAEL P., GARRETT, LAWRENCE, GARRETT, SHACKQUELINE C., GARTNER, EDITH M., GARZA, TERRI L., GATEWOOD, ALICE FAYE, GEARY, DONNA L., GILMER, PATRICIA G., GLOVER, SHIRLEY, GOOD, LORI L., GRAHAM, CATHY, GREER-BOYKIN, MATTIE L., GRIFFIN, JESSIE L., GRIFFITH, NANCY A., GROVES, STEVEN, GUILLORY, JEANNE A., GUTIERREZ, JULIE, GUTIERREZ, RAUL, GUYMON, CHRISTINE P., GUZMAN, LUPE N., HACKER, CATHY, HALL, ROSA L., HARMS, NANETTE B., HARRIS, ANDREA G., HARRIS, BILLY L., HAWKINS, GLORIA J., HENDERSON, ANNIE LOU, HENDERSON, GLORIA, HERI, MARY V., HERRE, QUINDA JEAN, HICKMAN, CYNTHIA R., HINKLE, MICHELE, HOCKETT, LENETTE M., HOERBER, LANA M., HOGAN, DONNA M., HOLDER, DOROTHY, HOSTER, BRUCE R., HOUSER, SARAH R., HOUSER, WILLIAM J., HOWE, ROSE M., HUNSUCKER, DAVID M., IQBAL, GLORIA D., IRVIN, MOLLIE A., JACKSON, RALPH E., JACOBSON, SHELLI L., JAMISON, CONNIE J., JEFFERSON, BLANCHE L., JOHNSON, ADELINE L., JOHNSON, GABRIELE H., JOHNSON, TAMI, JOHNSON, VICKIE L., JONES, CECILE M., JONES, GWENDOLYN F., JONES, WANDA A., JORDAN, BRENDA, KEEFE, CANDACE, KENTROLIS, LESLIE D., KIDD, CYNTHIA ANN, KINDRED, BETTY JO, KIRKMEYER, THOMAS, KLEMICK, DONALD J., KLIEWER, KELLY D., KRUMNOW, MARY L., KUHN, GOLDIE M., KUNZE, TODD K., KVITTEM, BARBARA A., LANKFORD, BETTY, LARSEN, GERALD E., LATTA, MARILYNN A., LEDFORD, CYNTHIA LUDEAN, LEE, GLENNA F., LEE, LINDA E., LEFAIVRE, CHARLOTTE K., LEGG, RUSSELL C., LIDIE, VICTORIA, LOCK, REBECCA, LOGAN, SUSIE E., LOTT, LINDA S., MAGNESS, ELIZABETH B., MARLOW, NANCY S., MARTIN, REEDA M., MASLYN, BARBARA A., MASON, DORIS M., MATHISON, LANNY, MCCARTY, EVELYN L., MCCOY, CYNTHIA, MCDONALD, VALERIE B., MCKEON, LISA L., MCKINNEY, EDDA, MEADER, ROBERT W., MEADOWS, PAMELA S., MECHAM, CHERYL, MEDINA, IRMA L., MERINO, LINDA K., MEUNIER, KATHY J., MILAM, BETTY L., MILLER, LINDA S., MIMS, OUIDA, MITCHELL, CAROL A., MITCHELL, HELEN M., MITZELFELT, JUDITH K., MOFFITT, DIXIE L., MOORE, CAROLYN E., MOORE, CATHERINE A., MOORE, CHARLOTTE B., MORALES, MICHELLE L., MORROW, JUDY R., MUELLER, JOSEPHINE FAYE, MURPHY, KAYELYNNE, MURPHY, MARGARET A., NASON, VIRGIE E., NEAL, JOAN N., NEAL, PATRICIA A., O'CONNOR, KRISTOL, O'DONOVAN, GAIL, OLDHAM, DAWN J., O'NEAL, DONNA C., PALACIO, JESSIE, PALMA, LORRAINE,

3

**PASTIZZO, EDWARD F., PAYNE, JAYNE, PENTALERI, LOIS O., PERRY, LINDA S., PETERSON, BARBARA, PFEIFFER, SHIRLEY H., PHELPS-DORRIS, LISA, PIETERNELLE, ELVIA R., PITTS, KELLY B., PIZIAK, ORLINDA, PLATT, ESTER J., PLESHE, SHERRI L., POORE, CATHY M., POPPELREITER, JANICE L., POUNDERS, BEVERLY A., PRICE, SHANNON D., PRUETT, CAROLE A., QUARANTO, NANCY, RAMSEY, KATHERINE D., REDMON, ELIZABETH, RHOADES, BEVERLY, RHODEN, DEANDRA M., RICHARDSON, FAYE, RICHARDSON, KATHI E., RICHIE, TEMPIE, RICHTER, KAREN D., RIEDLINGER, MARJORIE, ROBINSON, PATRICIA A., ROBINSON, DEBBIE A., RODGERS, DONNA C., RYAN, RUBY L., RYERSON, ROXANNE, SAIRAFE, PAMELA, SAWYER, CAROLYN J., SCHAEFER, PATRICIA E., SCHAFER, CAROLYN, SCHEUBER, CINDY S., SCHMIDT, CARL K., SCHMITT, DIANA M., SCHULTES, KRISTIE, SHEETS, JAMES, SHOMAKER, ROBERT L., SIMMONS, HELEN K., SMALLWOOD, PAULA L., SMITH, CAROLYN Y., SMITH, DEBORAH A., SMITH, SHARNELL J., SPURLIN, PATTIE S., STARK, JUDITH A., STEFANAVAGE, BARBARA J., STEVENS, KARA L., STEWART, JOANNE, STEWART, LINDA R., STOCKMAN, SHARON A., STOLLINGS, DELPHIA, STROIK, DOROTHY L., STUTESMAN, CHERYL, SULLIVAN, PEGGY J., SURRATT, CHARLOTTE D., SWISHER, SHIRLEY J., TALLEY, BERTHA M., TANNER, KELLE L., TAYLOR, BARBARA A., THOMAS, JERRY, THOMPSON, KARRI D., THOMPSON, TERRY L., THORMAHLEN, CYNTHIA L., TIDWELL, BARBARA A., TILSON, SANDRA G., TIPTON, KARAN JOE, TO, THUY, TOWE, JERRY M., TUCKER, SHARON L., TURNER, EILEEN, TURNER, LILLIAN, TURRENTINE, LINDA M., ULSKY, TONY, UTKIN, JANENE L., VAN BLARCOM, MICHELLE A., VICTORIA, MARY E., WAGNER, CATHERINE L., WALKER, LISA S., WALTERS, VANESSA L., WARD, GLADYS D., WATSON, LADONNA R., WEATHERSBY, NELLIE, WEEMS, DONNA D., WEILAND, CHARLI, WELLS, BERNICE, WHITE, PAMELA K., WHITE, ROGER, WHITEHEAD, EDDIE R., WHITMAN, VIRGINIA R., WILLIAMS, CORIA B., WILLIAMS, DARONDA E., WILLIAMS, DENISE A., WILLIAMS, SANDRA D., WILLIAMS, TERRY L., WILLMANN, LESLIE, WILLS, DONNA M., WILLS, RON W., WILMOTH, DEBORAH A., WITTE, ANITA M., WOELFEL, JOHANNA K., WOODARD, ZEOLA, WOODS, MARGARET M., AND ZIEMER, IMA L., Appellees**

**O P I N I O N**

In these consolidated appeals, we review the summary judgments granted to several hundred plaintiffs on their breach-of-fiduciary-duty claims against the attorney and law firm that represented them in their personal-injury claims arising from their use of diet drugs. The law firm screened tens of thousands of clients for eligibility to opt out of a class-action settlement and pursue personal-injury suits against a pharmaceutical company, and ultimately obtained an aggregate settlement of the claims for over 8,000 clients. From the gross settlement funds of each settling client, the law firm deducted a portion of the expenses of screening the claims of tens of thousands of clients who were not part of the settlement. In a series of summary-judgment motions, each of which was granted, the clients asserted that the defendants were collaterally estopped from contesting that they had breached fiduciary duties; that the allocation of these expenses was unreasonable and improper as a matter of law; that the attorney and law firm failed to adequately disclose the charges; and that fee forfeiture was warranted. Because the plaintiffs concede that summary-judgment cannot be affirmed on collateral-estoppel grounds, and because there is a question of fact as to every other ground on which the plaintiffs expressly moved for summary judgment, we reverse the judgments and remand the cases to the trial court for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In these consolidated cases, some of the former clients of attorney George Fleming sued him and his firm for allegedly deducting improper expenses from

their share of the settlement of a mass-tort claim. We discussed the origins of the case in *Fleming v. Kinney ex rel. Shelton*, 395 S.W.3d 917 (Tex. App.—Houston [14th Dist.] 2013, pet. filed) (sub. op.). Fleming asserted that the plaintiffs' claims against the Wyeth pharmaceutical company for personal injuries attributed to their use of a combination of the prescription diet drugs fenfluramine and phentermine—"fen-phen" for short. *See id.* at 920 (citing *In re Diet Drugs*, 553 F. Supp. 2d 442, 449 (E.D. Pa. 2008)). The claims were litigated in a nationwide class action before a federal multidistrict litigation ("MDL") court. *Id.* (citing *In re Diet Drugs*, 385 F.3d 386, 389–90 (3d Cir. 2004)). A claimant who wished to opt out of the class action and pursue individual claims had to establish his eligibility to sue by showing that an echocardiogram of his heart met certain criteria established by the MDL court. *Id.* The claims of a plaintiff failing to meet these criteria were subject to dismissal. *Id.*

Fleming expended more than $20 million on a nationwide echocardiogram program to screen potential clients and identify those meeting the MDL court's opt-out requirements. *Id.* More than 40,000 potential clients were screened, and after eliminating those claims that Fleming did not believe could be successfully litigated, he was left with a group of approximately 8,000 clients. As relevant to this appeal, these individuals had signed contingency-fee agreements that expressly or implicitly allowed Fleming to recover the reasonable expenses of litigation.[1] *Id.*

Wyeth and Fleming ultimately agreed to settle the claims of Fleming's group of 8,051 clients for an aggregate amount of about $339 million. *Id.* at 921. One of the conditions of the settlement was that at least 95% of this group had to agree to the settlement. *Id.* Each client received a settlement packet that included a spreadsheet showing the amount of the settlement funds allocated to each client.

---

[1] Although the individuals whose claims were not litigated may also have signed representation agreements, those individuals and agreements are not involved in this appeal.

6

*Id.* Each settlement packet also included a statement showing certain deductions, including the amount deducted from the client's allocated recovery for attorneys' fees and expenses. Nearly all of Fleming's clients accepted the settlement offer. *Id.*

After the claims were settled, Fleming and his firm were sued for fraud, breach of contract, breach of fiduciary duty, and other claims by more than 600 of his former clients. *Id.* The plaintiffs asserted that Fleming wrongfully deducted from their recovery a pro rata share of the expenses of the echocardiogram program, including expenses related to the screening of people whose echocardiograms were found not to meet the MDL court's opt-out criteria. *Id.* Fleming argued that it was reasonable and appropriate to allocate expenses in this manner. *Id.*

Pursuant to a Rule 11 agreement, the trial court selected ten plaintiffs for trial. *Id.* These ten individuals non-suited their fraud claims, and the jury found that Fleming had breached his contract with only one of them; however, the jury found that Fleming breached his fiduciary duty to all ten clients. *Id.* at 922. The jury determined that some of the expenses charged to each of these clients was unreasonable, but the damages awarded for the unreasonable expenses varied. *Id.* at 923. The trial court rendered judgment that Fleming pay these damages and additionally disgorge 32% of the attorneys' fees deducted from the settlement funds allocated to each of these ten clients. *Id.* The trial court severed these claims from the remainder of the lawsuit, and Fleming appealed. *Id.* We concluded that the trial court reversibly erred in admitting expert testimony that equated the violation of one of more of the Texas Disciplinary Rules of Professional Conduct with a breach of fiduciary duty. *Id.* at 930–33. A petition for review of that case is now pending before the Texas Supreme Court.

7

## A.    The *Curry* Case

Meanwhile, back in the trial court, the trial court granted the remaining plaintiffs partial summary judgment as to liability on the ground that, as a result of the judgment rendered in the severed case, Fleming was collaterally estopped from relitigating the question of whether he breached his fiduciary duty by charging unreasonable expenses.  Although the plaintiffs prevailed on that motion, they nevertheless filed a second traditional motion for partial summary judgment on liability.  In their second motion, the plaintiffs asserted that they were entitled to judgment as a matter of law because Fleming had breached his fiduciary duty by charging them unreasonable or improper expenses.  Before Fleming responded to the motion, five of the plaintiffs (collectively, "the *Curry* plaintiffs") successfully moved to sever their claims from those of the remaining plaintiffs.  Fleming then filed a response to the summary-judgment motion as to the *Curry* plaintiffs.  In his response, Fleming argued that there was at least a question of fact as to the reasonableness and propriety of the challenged expenses, and pointed out that he had pleaded waiver and ratification as affirmative defenses.[2]  In the *Curry* plaintiffs' summary-judgment reply, they additionally argued that the expenses were unconscionable and that Fleming's affirmative defense of waiver fails as a matter of law.  In separate summary-judgment proceedings, the parties addressed the issue of damages.

The trial court signed an interlocutory order in the *Curry* plaintiffs' favor as to both liability and damages, then addressed the issue of fee forfeiture.  As in the *Kinney* case, the trial court ordered disgorgement of 32% of the attorneys' fees charged to each of the plaintiffs.  The trial court awarded the five plaintiffs a total

---

[2] Although Fleming acknowledged that in the *Kinney* case, the trial court granted the plaintiffs' directed verdict on Fleming's affirmative defense of ratification, he argued that the ruling was erroneous.

8

of $1,097,844.54 in damages and $2,250,480.02 in disgorged fees, together with pre-judgment and post-judgment interest. Fleming appealed and superseded the *Curry* judgment.

## C. The *Alvarez* Case

After the trial court signed its interlocutory order granting summary judgment as to liability and damages in the *Curry* case, the remaining plaintiffs ("the *Alvarez* plaintiffs") moved for summary judgment on essentially the same grounds. The trial court found for the remaining plaintiffs on both liability and damages, and, as in *Kinney* and *Curry*, ordered disgorgement of 32% of the fees charged to the plaintiffs.[3] Fleming appealed, and we consolidated the *Curry* and *Alvarez* cases.

## II. ISSUES PRESENTED

In the first issue presented for our review, Fleming asserts that summary judgment cannot be sustained on the basis of offensive collateral estoppel. Fleming argues in his second issue that the trial court erred in granting summary judgment because the plaintiffs failed to conclusively establish that (a) the disputed expenses were unreasonable or unconscionable, and (b) they sustained actual damages. In his third issue, Fleming contends that the trial court erred in ordering disgorgement of fees in an order mirroring the 32% across-the-board disgorgement order in *Kinney*.[4]

## III. STANDARD OF REVIEW

We review the trial court's grant of a summary judgment de novo. *Ferguson*

---

[3] Because a number of plaintiffs non-suited their claims, the *Alvarez* judgment ultimately addressed the claims of about 350 clients.

[4] We have combined and restated the issues, which were presented in a different order in each of the two cases consolidated for our review.

9

*v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam) (citing *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007)). We consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). We must affirm the summary judgment if any of the movant's theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). On appeal, the summary-judgment movant still bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). In considering grounds for reversal, we are limited to those grounds expressly set forth in the summary-judgment motions, answers, or other responses, and may not rely on the appellate briefs or summary-judgment evidence. *D.M. Diamond Corp. v. Dunbar Armored, Inc.*, 124 S.W.3d 655, 659–60 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (op. on reh'g) (citing TEX. R. CIV. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993)).

## IV. ANALYSIS

To establish entitlement to judgment on a breach-of-fiduciary-duty claim, the plaintiff must show that (1) there was a fiduciary relationship between the plaintiff and the defendant, (2) the defendant breached the fiduciary duty, and

(3) the breach benefitted the defendant or injured the plaintiff. *Priddy v. Rawson*, 282 S.W.3d 588, 599 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). The attorney-client relationship gives rise to a fiduciary relationship as a matter of law. *Meyer v. Cathey*, 167 S.W.3d 327, 330–31 (Tex. 2005) (per curiam) (citing *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002)). It is undisputed that Fleming was the plaintiffs' attorney, and thus had a fiduciary relationship with them. The first element for a breach-of-fiduciary-duty is therefore met.

The dispositive issue in this appeal concerns the second element of the plaintiffs' claim, that is, whether the plaintiffs conclusively proved that Fleming breached a fiduciary duty. As we previously have stated, "the attorney-client relationship is one of 'most abundant good faith,' requiring absolute perfect candor, openness and honesty, and the absence of any concealment or deception." *Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (quoting *Perez v. Kirk & Carrigan*, 822 S.W.2d 261, 263–66 (Tex. App.—Corpus Christi 1991, writ denied)). "'An attorney breaches his fiduciary duty when he benefits improperly from the attorney-client relationship by, among other things, subordinating his client's interest to his own, retaining the client's funds, engaging in self-dealing, improperly using client confidences, failing to disclose conflicts of interest, or making misrepresentations to achieve these ends.'" *Smith v. Aldridge*, No. 14-11-00673-CV, 2012 WL 1071246, at *5 (Tex. App.—Houston [14th Dist.] Mar. 29, 2012, pet. denied) (mem. op.) (quoting *Gibson v. Ellis*, 126 S.W.3d 324, 330 (Tex. App.—Dallas 2004, no pet.)). As a fiduciary, an attorney "has an affirmative duty to make a full and accurate confession of all his fiduciary activities, transactions, profits, and mistakes." *Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 22 (Tex. App.—Tyler 2000, pet. denied) (citing

11

*Montgomery v. Kennedy*, 669 S.W.2d 309, 312–14 (Tex. 1984); *Kinzbach Tool Co., Inc. v. Corbett–Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 513–14 (1942)).

If the client alleges that the attorney has engaged in self-dealing, then a presumption of unfairness arises. *Cluck v. Mecom*, 401 S.W.3d 110, 114 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *Houston v. Ludwick*, No. 14-09-00600-CV, 2010 WL 4132215 (Tex. App.—Houston [14th Dist.] Oct. 21, 2010, pet. denied) (mem. op.). At trial, the fiduciary bears the burden to rebut that presumption by proving that the questioned transaction was made in good faith for a fair consideration after full and complete disclosure of all material information to the principal. *Jackson Law Office, P.C.*, 37 S.W.3d at 22. By moving for traditional summary judgment, however, Fleming's clients assumed the burden to establish their entitlement to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c). They therefore were required to conclusively *disprove* Fleming's compliance with a fiduciary duty. *See* Tex. R. Civ. P. 166a cmt. (1997) (explaining that a movant for traditional summary judgment "must prove it is entitled to judgment by establishing each element of its own claim or defense as a matter of law or by negating an element of the respondent's claim or defense as a matter of law"); *Neely v. Wilson*, 56 Tex. Sup. Ct. J. 766, 769 (Tex. June 28, 2013) ("The party moving for summary judgment bears the burden of proof." (citing *Roskey v. Tex. Health Facilities Comm'n*, 639 S.W.2d 302, 303 (Tex. 1982) (per curiam))).

## A. Summary judgment cannot be affirmed on collateral-estoppel grounds.

Among their other grounds for summary-judgment, the plaintiffs asserted that as a result of the judgment in the *Kinney* case, Fleming was collaterally estopped from relitigating the question of whether he breached a fiduciary duty. In

12

Fleming's first issue, he argued that summary judgment could not be affirmed on collateral-estoppel grounds. The plaintiffs concede that because we reversed the judgment in the *Kinney* case on which they relied, that judgment no longer serves as a basis for collateral estoppel. *See Kinney*, 395 S.W.3d at 933. In light of this concession, we sustain Fleming's first issue without further discussion.

**B.    The plaintiffs failed to establish that the disputed expenses were unreasonable or improper as a matter of law.**

In his second issue, Fleming argued *inter alia* that that the trial court erred in granting summary judgment because the plaintiffs failed to conclusively establish that the disputed expenses were unreasonable or improper, that is, that the allocation of expenses was unfair in light of the contracts with the plaintiffs allowing the deduction of reasonable expenses. *See Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 702 (Tex. 2007) (explaining "that fiduciary duties are equitable in nature and generally not subject to hard and fast rules" and that Texas law is consistent with the principal "that an agent's duties of performance to the principal are subject to the terms of any contract between them" (quoting RESTATEMENT (THIRD) OF AGENCY § 8.07 cmt. a (2006)). We agree.[5]

The summary-judgment evidence established that in the summer of 2006, each of the plaintiffs received a settlement statement containing certain information about every settling client. This information included the total amount

---

[5] Although Fleming additionally argues that the expenses charged were not unconscionable, we need not address this argument separately. If the plaintiffs' argument that the expenses were unconscionable is merely an amplification of their argument that the allocation of expenses was unreasonable or improper, then our conclusion that there is a question of fact as to the reasonableness and propriety of the expense allocation disposes of the unconscionability argument as well. If this instead was raised as a distinct ground for summary judgment, then it was not properly before the trial court because it was raised only in the plaintiffs' summary-judgment replies and supplemental briefing. *See McConnell*, 858 S.W.2d at 341 ("A motion must stand or fall on the grounds expressly presented in the motion. In determining whether grounds are expressly presented, reliance may not be placed on briefs or summary judgment evidence.").

allocated to settlement of each claim, the amount reserved from each client's recovery for future expenses and costs, the amount reserved from each client's recovery for clients whose conditions have substantially worsened, the amount of attorneys' fees paid by each client, the amount that each client paid for "[c]lient expenses," and each client's net recovery. "Client expenses" were defined in the settlement statement as follows:

> The expenses identified on this Settlement Statement reflect your proportionate share of the expenses that Fleming & Associates, L.L.P. incurred in developing the liability and damage issues against the defendants, and the expenses associated with settling this litigation. Expenses include filing fees, service fees, and court fees; postage and courier costs; medical records fees; deposition expenses; travel expenses; investigative and/or expert witness fees; experts retained to do epidemiology and cardiology studies to assist the plaintiffs in the fen-phen litigation, including costs associated with those studies (for example, echocardiograms); and interest paid to banks in financing fen-phen cases.

After more than 8,000 of Fleming's fen-phen clients had accepted the settlement offer and the first payment had been disbursed to nearly all of them, Fleming sent the settling clients the final settlement payment, together with summaries of the expenses charged to the client. The summary of client expenses included categories for "communications & postage," copies, court costs, court reporters, "evidence," "experts (medical experts, medical studies and other ligation expert expenses)," "miscellaneous," "professional services," "records," "research," travel, "interest charged by banks," "release mailout," and "credit for settled cases."[6] In the accompanying letter, Fleming wrote as follows:

> Five (5) persons have raised questions about a particular expense item that was summarized in the settlement package last summer. One suit has even been filed alleging some of those

---

[6] Capitalization normalized.

expenses were improper. . . .

On the enclosed "Summary of Client Expenses — 1st Payment" and "Summary of Client Expenses — 2nd Payment" a breakdown of the various category [sic] of expenses charged to you are provided and you will find a category labeled "Experts (Medical experts, medical studies, and other litigation expert expenses)." This is one of the largest categories of expenses, and includes the huge costs we incurred to prove the medical aspects of your case and counter the enormous effort over the years that Wyeth made to have your case thrown out of court. **These expenses include the cost of performing echocardiograms on each of you who participated in the settlement and on approximately 35,000 additional clients who did not ultimately become plaintiffs and were not eligible to participate in the settlement. We continue to believe the charge was entirely appropriate.**[7]

Although the settling clients were charged a pro rata share of closed-case expenses, and those expenses included charges for copies of records, communications, and travel, Fleming did not explain that the settling clients were charged a pro rata share of any closed-case expenses other than those paid for "experts."

The plaintiffs contend that because the foregoing evidence is undisputed, the record conclusively establishes that Fleming breached his fiduciary duties to them. But as the Texas Supreme Court has explained, "[u]ndisputed evidence may be conclusive of the absence of a material fact issue, but only if reasonable people could not differ in their conclusions as to that evidence." *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012) (per curiam) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 814 (Tex. 2005)). As discussed below, however, Fleming produced evidence that reasonable people could differ in the conclusions to be drawn.

### 1. The reasonableness of the expense allocation is a question of fact.

The plaintiffs argued that charging each settling plaintiff a pro rata share of

---

[7] Emphasis in original.

the closed-case expenses was a breach of fiduciary duty as a matter of law because these are unreasonable or improper expenses. But unless the evidence is undisputed, the question of whether a party breached a fiduciary duty generally is treated as one of fact. *See, e.g.*, *In re Guardianship Walzel*, No. 13-08-00509-CV, 2010 WL 335686, at *6 (Tex. App.—Corpus Christi Jan. 28, 2010, no pet.) (mem. op.) (refusing to "second-guess the [factfinder's] assessment of conflicting evidence" and concluding that the evidence was sufficient to support factual finding that guardian complied with her fiduciary duty); *Flanary v. Mills*, 150 S.W.3d 785, 794–95 (Tex. App.—Austin 2004, pet. denied) (noting that there was competing evidence, but holding that the evidence was legally and factually sufficient to support a factual finding of breach of fiduciary duty). Under the attorney-client representation agreements, the plaintiffs' counsel was allowed to deduct reasonable expenses,[8] and the question of whether an expense is reasonable also is generally treated as a question of fact. *See, e.g.*, *State v. Landry*, 793 S.W.2d 281, 283 (Tex. App.—Houston [14th Dist.] 1990, no writ); *Eppoleto v. Bournias*, 764 S.W.2d 284, 285–86 (Tex. App.—Waco 1988, no writ); *Accounting Search Consultants, Inc. v. Christensen*, 678 S.W.2d 593, 595 (Tex. App.— Houston [14th Dist.] 1984, no writ); *Sewer Constructors, Inc. v. Employers Cas. Co.*, 388 S.W.2d 20, 25 (Tex. Civ. App.—Houston 1965, writ ref'd n.r.e.).

The plaintiffs have cited no authority that, as a matter of law, it is unreasonable or improper to deduct a pro rata share of expenses such as those at issue here, and we cannot presumptively answer that question in favor of the

---

[8] Some of the plaintiffs' attorney-representation agreements do not expressly state that reimbursable costs must be reasonable or necessary; however, we have previously applied contract law to the construction of an agreed decree concerning "attorney's fees and costs incurred" and held that this unambiguously meant "reasonable and necessary" attorney's fees and costs. *Kurtz v. Kurtz*, 158 S.W.3d 12, 17–19 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

16

summary-judgment movants. *See Highlands Ins. Co. v. Currey*, 773 S.W.2d 750, 754 (Tex. App.—Houston [14th Dist.] 1989, writ denied) (op. on reh'g); *see also City of Keller*, 168 S.W.3d at 824 (explaining that in an appeal from a summary judgment, the reviewing court considers the record "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion").

The plaintiffs contend that the proper question is not whether Fleming's allocation of expenses was reasonable, but whether "the applicable legal standards" permitted Fleming to charge them a pro rata share of the disputed expenses. They assert that the charges were improper as a matter of law under the fiduciary-duty standard, several of the Texas Disciplinary Rules of Professional Conduct, and an opinion interpreting one of those rules. In effect, plaintiffs are arguing that charging settling clients a pro rata share of "closed-case expenses" is unreasonable or improper per se, and thus, is a breach of fiduciary duty as a matter of law. But the plaintiffs have identified no court that has ever so held, and we decline to create such a rule, which would be contrary to authority treating as questions of fact the determination of whether expenses were reasonable and whether a fiduciary duty was breached. Although the plaintiffs have attempted to support their argument by citing to the Texas Disciplinary Rules of Professional Conduct and authorities construing them, these sources do not alter our conclusion that the propriety of Fleming's conduct is a question of fact. As we explained in *Kinney*, these rules are inappropriate as a basis for civil liability for breach of fiduciary duty. *See Kinney*, 395 S.W.3d at 929. *See also* TEX. DISCIPLINARY RULES PROF'L CONDUCT pmbl., *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2013) (TEX. STATE BAR R. art. X, § 9) ("Violation of a rule does not . . . create any presumption that a legal duty to a client has been breached.").

17

The same reasoning applies to opinions interpreting those rules.

Here, the summary-judgment evidence creates, but does not resolve, questions of fact. In his summary-judgment affidavits, Fleming described the requirements that the MDL court expected individuals to satisfy in order to opt out of the class-action settlement. These requirements included an electrocardiogram administered in a certain way, and producing certain indications of injury. Fleming testified that because only a certain proportion of the people who had taken fen-phen were expected to have sustained a compensable injury, the echocardiogram program was subject to attack on reliability grounds if it didn't produce negative as well as positive results. By testing a large number of people who had taken fen-phen and finding the expected ratio of positive to negative findings (referred to as "the prevalence rate"), the negative results validated the positive results. Fleming identified other law firms that faced the exclusion of their expert witnesses and defeat of their clients' claims because the prevalence rate produced by those firms' echocardiogram programs was too high. He further attested that in settlement discussions with Wyeth's counsel, he represented "that Wyeth would not be able to eliminate our clients because of the quality of our echo program and its prevalence rate." He reasoned that the negative results advanced the interests of the clients who were able to successfully prosecute their cases to settlement. He therefore concluded that it was appropriate to charge the plaintiffs a proportionate share of the expenses incurred in obtaining negative results—including costs for medical records and other litigation expenses—because the expenses were reasonable, necessary, and were incurred and paid to advance the plaintiffs' interest.

Former Harris County District Court Judge John Wooldridge similarly attested that it was fair and reasonable to charge the plaintiffs a proportionate share

of the expenses incurred for all echocardiograms because

> [the echocardiogram program] was integral to: finding clients who were eligible to sue Wyeth; complying with the eligibility requirements for opt-outs imposed by the nationwide class action settlement; forming a formidable group of clients that put Wyeth at substantial risk; giving the group value; fending off the relentless Wyeth attacks on eligibility to sue; increasing the settlement value of Fleming's fen-phen cases; and preparing to develop evidence to be used at trial to blunt various scientific studies funded by Wyeth.

Former Harris County District Court Judge Michael O'Brien, who negotiated the aggregate settlement agreement with Wyeth, likewise testified that it was appropriate to charge the total cost of the echocardiogram program to the plaintiffs because he actually used the program's reliability in successfully negotiating the settlement.

Although the evidence runs to many thousands of pages, it is unnecessary for us to summarize all of it, because the judgment must be reversed if there is a genuine issue of material fact, and such an issue exists "if there is more than a scintilla of probative evidence." *See Neely*, 56 Tex. Sup. Ct. J. at 769. *See also* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."). Based on the foregoing, we conclude that there is a genuine issue of material fact as to whether Fleming breached his fiduciary duty to the plaintiffs by charging each of them a pro rata share of the closed-case expenses.

### 2. *The determination of whether Fleming adequately disclosed the expense allocation is a question of fact.*

An attorney "owes a client a duty to inform the client of matters material to the representation." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 160 (Tex. 2004) (citing *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988)). "A fact is material if it would likely affect the conduct of a reasonable person concerning

the transaction in question." *Hannon, Inc. v. Scott*, No. 02-10-00012-CV, 2011 WL 1833106, at \*6 (Tex. App.—Fort Worth May 12, 2011, pet. denied) (mem. op.) (citing *Miller v. Kennedy & Minshew, P.C.*, 142 S.W.3d 325, 345 (Tex. App.—Fort Worth 2003, pet. denied)). "Materiality thus centers on whether a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question." *Id.* (citing *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 613 (Tex. App.—Waco 2000, pet. denied)).

Although Fleming broadly disclosed the amount of expenses charged to each of the plaintiffs, they contend that he breached his fiduciary duty by providing insufficient detail about the way that these amounts were calculated. This is illustrated by the plaintiffs' summary-judgment affidavits, in which each of the plaintiffs attested as follows:

> When I signed my Wyeth settlement packet I did not know that I was being charged for echocardiogram tests and reads that Fleming and Fleming & Associates provided to people who were not part of the Wyeth settlement. I also did not know that I was being charged for "bank interest" relating to echocardiogram tests and reads that Fleming and Fleming & Associates provided to people who were not part of the Wyeth settlement. I also did not know I was charged for various other expenses that had nothing to do with my case. I never agreed to those charges and would not have agreed to those charges if I had been told I was being charged for them. *I was not provided a detailed break-down of the expenses* I was being charged when I received my Wyeth settlement packet. *If I had been[,] then I would have known what I was being charged* and I would not have agreed to pay the expenses that I am challenging with my lawsuit.[9]

The relevant question is not whether these particular individuals believed that the deduction from their recovery of a portion of the closed-case expenses was

---

[9] Emphasis added.

material information, but whether a "reasonable person" would consider this information material.

On this record, there is a question of fact as to whether Fleming complied with his fiduciary duty to disclose all material information to the plaintiffs. Fleming attested that, based on his experience, the information important to clients "is what they get to put in their pocket, their net." The settlement statements provided this information, and Fleming attested that the statements were "correct and adequate." Wooldridge attested that Fleming's written statement "describ[ed] the outcome of the matter, the remittance to the client, and the method of its determination" as well as "the existence and nature of all of the claims involved and the nature and extent of the participation of each person in the settlement." He concluded that Fleming "adequately disclosed to the settling clients all of the information that Fleming was obligated to disclose under . . . fiduciary principals." The fact that Fleming's explanation of the expenses charged was not as detailed as it could have been or that some of Fleming's settling clients consider the disclosure to be inadequate does not conclusively establish that he breached his fiduciary duty. Moreover, even evidence that the plaintiffs did not understand the transaction does not necessarily mean that Fleming failed to make a good-faith effort to fully inform them of all material information concerning "the nature and effect of the transactions" or that it was unfair to charge each client a pro rata share of the closed-case expenses. *See Stephens Cnty. Museum, Inc.*, 517 S.W.2d at 261.

In sum, we conclude that the plaintiffs failed to conclusively establish that Fleming breached his fiduciary duty to them by making an unreasonable or improper allocation of expenses, or by failing to adequately disclose the expenses charged. We accordingly hold that the trial court erred in granting summary judgment on the plaintiffs' breach-of-fiduciary-duty claims.

21

**C.** **Because the clients failed to establish that Fleming breached his fiduciary duties to them, they failed to establish their right to the equitable remedy of fee forfeiture.**

In his third issue, Fleming argues that the trial court erred in granting the plaintiffs' further summary-judgment motions on fee disgorgement, as a result of which the trial court ordered that Fleming forfeit 32% of the attorney's fees paid by the plaintiffs. Again, we agree.

Fee forfeiture is an equitable remedy available in some circumstances for an attorney's breach of fiduciary duty. The remedy is primarily intended "to protect relationships of trust from an agent's disloyalty or other misconduct." *Burrow v. Arce*, 997 S.W.2d 229, 240 (Tex. 1999). Fee forfeiture is never mandatory, but the trial court, in the exercise of its discretion, may order all or part of the attorney's fee forfeited if the trial court finds that the attorney's breach of duty was "clear and serious" and that other factors make forfeiture appropriate. *Id*. at 243, 246; *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 429 (Tex. App.— Austin 2009, no pet.).

Here, however, there is a question of fact on the threshold issue of whether there was a breach of fiduciary duty at all. In the absence of such a determination, the trial court had no discretion to order Fleming to forfeit any part of his fees. We accordingly sustain Fleming's third issue.

## V. CONCLUSION

We decline to create a bright-line rule that, as a matter of law, it is unreasonable or improper for a plaintiffs' attorney to deduct a pro rata share of closed-case expenses from the recovery of each client participating in the aggregate settlement of a mass-tort case. Whether Fleming complied with his fiduciary duties in allocating and disclosing the expenses charged to each client is

instead a question of fact, and the plaintiffs failed to produce evidence conclusively establishing that Fleming's conduct breached his fiduciary duties to them. Fleming, on the other hand, produced more than a scintilla of evidence that his allocation of expenses was reasonable and proper, and that he adequately disclosed all material information about the expenses to the plaintiffs. We therefore reverse the trial court's judgments, discharge the sureties, and remand the cases for further proceedings not inconsistent with this opinion.


/s/    Tracy Christopher
Justice


Panel consists of Justices Brown, Christopher, and McCally.

23