**Katsy CLUCK, John W. Mecom, III, and Mary Elizabeth Mecom Hahnfeld, Appellants**

**v.**

**John W. MECOM, Jr., as Trustee of the Mary Elizabeth Mecom Irrevocable Trust No. II, Appellee.**

**No. 14–09–00837–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

March 15, 2011.

James R. Lovell, Dumas, John H. Lovell, Amarillo, Courtney D. Miller, Amarillo, for Appellants.

John Andrew Ramirez, Houston, Curt M. Langley, Houston, Jody Gene Sheets, Dallas, Allison Gabbert, Houston, for Appellee.

Panel consists of Justices SEYMORE, BOYCE, and CHRISTOPHER.

## OPINION

CHARLES W. SEYMORE, Justice.

Appellants, Katsy Cluck ("Katsy"), John W. Mecom, III ("John"), and Mary Elizabeth Mecom Hahnfeld ("Mary Elizabeth"), appeal a summary judgment in favor of appellee, John W. Mecom, Jr., as Trustee of the Mary Elizabeth Mecom Irrevocable Trust No. II ("Mecom"), in appellants' suit for breach of fiduciary duty, conversion, and civil theft. In four issues, appellants contend the trial court erred by rendering a no-evidence summary judgment relative to the merits of their claims and a traditional summary judgment based on the statute of limitations. We affirm the summary judgment on appellants' conversion and civil-theft claims but reverse and remand the summary judgment on their claim for breach of fiduciary duty.[1]

### I. BACKGROUND

Appellants are three of Mecom's four children.[2] Mary Elizabeth Mecom ("Mrs.

---

1. Another plaintiff below, Kathleen Mecom Fogarty, does not appeal the judgment. Thus, we do not address the portion of the judgment disposing of her claims.

2. We will refer to these three children collec-

Mecom"), now deceased, was Mecom's mother and appellants' grandmother. In 1983, Mrs. Mecom established "The Mary Elizabeth Mecom Irrevocable Trust No. II." In the trust instrument, she conveyed certain assets to the trust including a money-market fund, securities, bonds, partnership interests, promissory notes, accounts receivable, "[a]ll household goods and personal effects owned" by Mrs. Mecom, and real estate. Mrs. Mecom served as original trustee and named Mecom as successor trustee. Mecom has served as trustee since Mrs. Mecom's death on May 4, 1996. Under its terms, upon Mrs. Mecom's death, the trust terminated and appellants became successor beneficiaries because no power of appointment was exercised in Mrs. Mecom's will.

On August 13, 2008, Katsy filed the underlying suit against Mecom and also joined John and Mary Elizabeth as involuntary plaintiffs. In their live pleading, appellants allege that Mecom has not made any distributions to them as required under the trust, has failed to fully disclose transactions involving trusts assets, and converted, stole, and squandered assets. Appellants further allege that Mecom committed such misconduct via the following actions: (1) as executor of, and sole heir under, Mrs. Mecom's will, Mecom did not classify certain assets as property of the estate when filing probate documents and estate-tax returns, but after the probate matter was closed, he claimed ownership of these assets as property of the estate rather than the trust; (2) Mecom forgave his own debts to the trust without any consideration to the trust or the beneficiaries; and (3) Mecom commin-

gled trust assets with his own property or sold assets and retained the proceeds. Appellants plead claims for breach of fiduciary duty, conversion, and liability under the Texas Theft Liability Act. Appellants request damages, a declaratory judgment "determining [their] rights and interests," an order compelling an accounting, attorney's fees, removal of Mecom as trustee, and appointment of a successor trustee or a receiver.

Mecom filed an amended motion for summary judgment including (1) a no-evidence ground challenging elements of appellants' claims, and (2) a traditional ground contending all claims are barred by the applicable statutes of limitations.[3] In their response, appellants presented evidence purporting to defeat the no-evidence ground, and, consistent with their pleading, appellants raised the discovery rule and doctrine of fraudulent concealment relative to the limitations ground. On September 15, 2009, the trial court signed an order granting summary judgment on both the no-evidence and traditional grounds. Subsequently, the trial court denied appellants' motion for reconsideration.

## II. NO-EVIDENCE SUMMARY JUDGMENT

In appellants' first three issues, they challenge no-evidence summary judgment on all their claims.

### A. Standard of Review

After adequate time for discovery, a party may move for summary judgment on the ground there is no evidence of one or more essential elements of a claim on which an adverse party would have the

---

tively as "appellants" except when necessary to refer to an appellant separately. Because their sibling, Kathleen Mecom Fogarty, has not joined this appeal, we omit her from the background discussion.

3. Mecom previously filed a traditional motion followed by a separate no-evidence motion. After further discovery, Mecom filed his amended motion, which is the motion granted by the trial court.

burden of proof at trial. Tex.R. Civ. P. 166a(i); *W. Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex.2005). The movant must state the elements on which there is no evidence. Tex.R. Civ. P. 166a(i). Unless the respondents produce summary-judgment evidence raising a genuine issue of material fact on the challenged element, the trial court must grant the motion. *Id.; Urena,* 162 S.W.3d at 550. To defeat a no-evidence motion for summary judgment, the non-movants need not marshal their evidence, but must identify in their response evidence raising a genuine issue of fact on the challenged elements. *See* comment to Tex.R. Civ. P. 166a(i); *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 207 (Tex.2002); *Pico v. Capriccio Italian Rest.,* 209 S.W.3d 902, 912 (Tex.App.-Houston [14th Dist.] 2006, no pet.); *San Saba Energy, L.P. v. Crawford,* 171 S.W.3d 323, 330 (Tex.App.-Houston [14th Dist.] 2005, no pet.).

We review a summary judgment *de novo. Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). We take as true all evidence favorable to the nonmovants and indulge every reasonable inference and resolve any doubts in their favor. *Id.*

## B. Breach of Fiduciary Duty

The elements of a claim for breach of fiduciary duty are (1) a fiduciary relationship between the plaintiff and the defendant, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or a benefit to the defendant as a result of the breach. *Priddy v. Rawson,* 282 S.W.3d 588, 599 (Tex. App.-Houston [14th Dist.] 2009, pet. denied) (citing *Lundy v. Masson,* 260 S.W.3d

482, 501 (Tex.App.-Houston [14th Dist.] 2008, pet. denied); *Jones v. Blume,* 196 S.W.3d 440, 447 (Tex.App.-Dallas 2006, pet. denied); *Punts v. Wilson,* 137 S.W.3d 889, 891 (Tex.App.-Texarkana 2004, no pet.)). In his motion, Mecom asserted that appellants have no evidence of the second and third elements.[4]

A fiduciary "has an affirmative duty to make a full and accurate confession of all his fiduciary activities, transactions, profits, and mistakes." *Jackson Law Office, P.C. v. Chappell,* 37 S.W.3d 15, 22 (Tex.App.-Tyler 2000, pet. denied) (citing *Montgomery v. Kennedy,* 669 S.W.2d 309, 312–14 (Tex.1984); *Kinzbach Tool Co., Inc. v. Corbett–Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509, 513–14 (1942)). Additionally, when a plaintiff alleges self-dealing by the fiduciary as part of a breach-of-fiduciary-duty claim, a presumption of unfairness automatically arises, which the fiduciary bears the burden to rebut. *See Houston v. Ludwick,* No. 14–09–00600–CV, 2010 WL 4132215, at \*7 (Tex.App.-Houston [14th Dist.] Oct. 21, 2010, pet. denied) (mem. op.); *Chappell,* 37 S.W.3d at 22 (citing *Stephens County Museum, Inc. v. Swenson,* 517 S.W.2d 257, 261 (Tex.1974); *Int'l Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567, 576 (Tex.1963)). Mecom admitted in his deposition that he owed a fiduciary duty to manage the assets for appellants' benefits and a duty to disclose his personal transactions with the trust.

We question whether a no-evidence summary judgment could be appropriate under the circumstances of this case because Mecom bears the burden to fully disclose his activities as fiduciary and prove the fairness of his personal transactions with the trust. *See Houston,* 2010

---

4. In his amended motion for summary judgment, Mecom cited the third element as "an injury to the plaintiff *and* benefit to the defendant ..." (emphasis added)—in the conjunctive; but the element is actually "an injury to the plaintiff *or* benefit to the defendant ..." (emphasis added)—in the disjunctive. *See Priddy,* 282 S.W.3d at 599.

WL 4132215, at *7; *Chappell*, 37 S.W.3d at 22. Nevertheless, to the extent that a no-evidence summary judgment could be appropriate, appellants presented sufficient evidence to defeat this ground by offering Mecom's testimony demonstrating his inability thus far to fully explain his activities as trustee, including his personal transactions involving trust assets. For example, in his deposition, Mecom gave the following responses to inquiries regarding various entries on an accounting he produced relative to the trust:

- "I'm not sure" when asked what trust assets had to be sold to pay estate and inheritance taxes of Mrs. Mecom.

- "I can't remember" when asked about assets he sold and for which he retained the proceeds.

- "I don't recall" when asked if he ever repaid $35,324 he owed the trust in 1996–97.

- "I don't recall" when asked how the trust accumulated $81,314.57 in general and administrative expenses in 1997.

- "I don't recall" when asked about a transaction he had with the trust in 1999 totaling $96,161.26.

- "I don't know" when asked how Mrs. Mecom's debts increased by $41,624 in 1999 when she had been deceased for three years.

- "I don't know" when asked about charging general office and administrative expenses of half-a-million dollars per year.

- "I don't know" when asked how his account payable to the trust was reduced by $536,691.

In his appellate brief, Mecom asserts appellants failed to cite the whole of his testimony demonstrating he deferred to his retained professionals, including his accountant, John West, as more equipped to explain the transactions. Mecom further suggests appellants did not complain to the trial court that they lacked an opportunity to obtain further information from these professionals before submission of the motion for summary judgment. Therefore, Mecom suggests appellants have not met their burden to defeat no-evidence summary judgment because they failed to present evidence that persons more familiar with the transactions were unable to explain them.

However, on this record, we conclude for several reasons that Mecom may not, at least for summary-judgment purposes, merely defer to other professionals to justify his inability thus far to prove fairness of the transactions. First, once appellants cited evidence in their response showing Mecom's inability to explain the transactions, the record contains no reply from Mecom informing the trial court he deferred to other professionals to provide such explanations. *See* Tex.R. Civ. P. 166a(c) (providing trial court must grant motion for summary judgment if "moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response"); *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex.1993) (recognizing that Rule 166a(c) unequivocally restricts the trial court's ruling to issues raised in the motion, response, and any subsequent replies). Second, the evidence indicated that certain unexplained transactions involved Mecom personally, such as forgiveness of his own substantial debt to the trust. Finally, some evidence indicated Mecom and at least his accountant have taken various seemingly inconsistent positions regarding the trust assets, including the following: (1) Mecom claimed Mrs. Mecom's household goods and personal effects were conveyed to him under her will, yet his testimony indicated he did not list these items in probate court filings or estate-tax returns, prepared by his account-

ant and signed by Mecom; (2) at one point, Mecom's accountant told appellants the trust was never funded because assets were not properly conveyed thereto, but Mecom's testimony indicating transactions regarding trust assets were conducted after creation of the trust raises a reasonable inference such assets may have indeed existed; and (3) Mecom claimed most trust assets were dissipated to pay Mrs. Mecom's liabilities, which fails to explain why debts to the trust may have been forgiven.

In sum, appellants presented evidence sufficient to raise a genuine issue of material fact on whether Mecom breached his fiduciary duty. Moreover, with respect to the third element of appellants' claim, evidence of breach constitutes evidence that they have suffered an injury because transactions which Mecom has failed thus far to explain involve disposition of assets for which appellants were the intended beneficiaries. Accordingly, the trial court erred by granting no-evidence summary judgment on the claim for breach of fiduciary duty. We sustain appellants' second issue.

## C. Conversion

 In his motion for summary judgment, Mecom asserted that appellants have no evidence of the following elements of a conversion claim: (1) the plaintiff owned, possessed, or had the right to immediate possession of personal property; (2) the defendant wrongfully exercised dominion or control over such property; and (3) the plaintiff suffered injury. *See United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147 (Tex.1997) (per curiam); *Burns v. Rochon*, 190 S.W.3d 263, 268 (Tex.App.-Houston [1st Dist.] 2006, no pet.).

We agree that appellants did not raise a genuine issue of material fact on the sec-

ond above-cited element—whether Mecom wrongfully exercised dominion or control over appellants' property. The extent of appellants' summary-judgment response relative to this element was the following paragraph:

> [Mecom] admits he was named as the successor trustee of the Trust by his mother, the Settlor, and he admits that he has been acting as the trustee of the Trust since she passed away on May 4, 1996. Schedule A to the Trust outlines the assets which were conveyed to the Trust.

> ... Settlor has conveyed, transferred and assigned, and does by these presents convey, transfer and assign unto the Trustee the assets and properties described in Schedule A attached hereto and made a part hereof, ...

Even though Schedule A listed four pages of assets which were transferred to the Trust, [Mecom] testified that he is not aware of any assets left in the Trust. [Mecom] also admitted that although his mother set up the Trust for the benefit of [Mecom's] children, they did not receive anything from it. Since four pages of assets were transferred to the Trust (of which [Mecom] admits he is the Trustee), and [Mecom] has testified that the beneficiaries have not received anything from the Trust, and he is not aware of any assets left in the trust, there is at least a fact issue as to whether or not [Mecom] wrongfully exercised dominion or control over the Trust assets.

(citations to evidentiary exhibit numbers omitted).

We conclude these facts alone are insufficient to raise a reasonable inference that Mecom *wrongfully* exercised dominion or control over trust assets. Accordingly, the trial court properly granted no-evidence

summary judgment on appellants' conversion claim. We overrule their second issue.

### D. Civil Theft

The Texas Theft Liability Act permits a civil cause of action for damages against a party who commits theft via any of the numerous methods defined under the Texas Penal Code. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 134.001–.005 (West 2005). Under the theory applicable to the present case, the plaintiff must prove the defendant unlawfully appropriated the plaintiff's property with intent to deprive the plaintiff of the property and the plaintiff sustained damages. *See id.* §§ 134.002, .003; Tex. Pen.Code Ann. § 31.03(a) (West Supp. 2009). In his motion for summary judgment, Mecom asserted that appellants have no evidence of any elements of civil theft.

We agree that appellants did not raise a genuine issue of material fact on whether Mecom unlawfully appropriated appellants' property with intent to deprive them of the property. Appellants' summary-judgment response regarding this element was identical in pertinent respects to their above-quoted response relative to the conversion claim, except they contend the recited facts show "there is definitely a fact issue as to whether or not [Mecom], as Trustee, unlawfully appropriated, secured, or stole the Trust assets."

Again, we conclude these facts alone are insufficient to raise a reasonable inference Mecom unlawfully appropriated trust assets, much less that he committed any such conduct with intent to deprive appellants of the property. Accordingly, the trial court properly granted no-evidence summary judgment on appellants' civil-theft claim. We overrule appellants' first and third issues.

### III. TRADITIONAL SUMMARY JUDGMENT

■ Because the trial court erred by granting no-evidence summary judgment on appellants' claim for breach of fiduciary duty, we must consider their fourth issue, challenging traditional summary judgment on the statute-of-limitations ground. *See Knott,* 128 S.W.3d at 216 (recognizing that, when trial court does not specify in its order grounds relied on in granting summary judgment, appellate court must affirm if any ground presented to the trial court and preserved for appellate review is meritorious).

### A. Standard of Review and Applicable Law

A party moving for traditional summary judgment must establish there is no genuine issue of material fact and he is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Knott,* 128 S.W.3d at 215–16. A defendant moving for summary judgment must conclusively negate at least one element of the plaintiff's theory of recovery or plead and conclusively establish each element of an affirmative defense. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995). If the defendant establishes its right to summary judgment, the burden shifts to the plaintiff to raise a genuine issue of material fact. *Id.*

■ The accrual date of appellants' claim is the pivotal dispute with respect to the limitations issue in this case. As a general rule, a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later and even if all resulting damages have not yet occurred. *S.V. v. R.V.,* 933 S.W.2d 1, 4 (Tex.1996). The discovery rule, when applicable, defers accrual of a cause of action until the plaintiff knew, or, exercising reasonable diligence, should have known, of the facts giving rise

to the cause of action. *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998).

■ A defendant seeking summary judgment based on limitations must (1) conclusively prove when the cause of action accrued and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving, as a matter of law, there is no genuine issue of fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of her injury. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). If the movant establishes that limitations bars the action, the nonmovant must then adduce summary-judgment proof raising a fact issue to avoid the statute of limitations. *Id.*

### B. Analysis

The four-year statute of limitations applies to a claim for breach of fiduciary duty. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.004(a)(5) (West 2002). In his motion for summary judgment, Mecom contended appellants' claim accrued when Mrs. Mecom died on May 4, 1996, or alternatively, if the discovery rule is applicable, no later than December 16, 1998; thus, appellants' suit, filed August 13, 2008, is barred by limitations.

· Mecom cited *Guardian Trust Co. v. Studdert*, 36 S.W.2d 578, 583 (Tex.Civ. App.-Beaumont 1931), *aff'd*, 55 S.W.2d 550 (Tex. Comm'n App.1932, holding approved) and *Nordyke v. Nordyke*, No. 07–96–406–CV, 1998 WL 4508, at *3 (Tex.App.-Amarillo 1998, pet. denied) to support his position that claims against a trustee accrue on the date the trust is terminated. However, these cases are not controlling in the

present situation because appellants have raised the discovery rule.

■ In his motion, despite contending the limitations period commenced upon Mrs. Mecom's death, Mecom also seemed to acknowledge that the discovery rule may be applicable to a claim for breach of fiduciary duty. Indeed, the Texas Supreme Court has held that a fiduciary's misconduct is inherently undiscoverable. *S.V.*, 933 S.W.2d at 8; *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex.1996). The reason for this principle is that a person to whom a fiduciary duty is owed is either unable to inquire into the fiduciary's actions or unaware of the need to do so. *S.V.*, 933 S.W.2d at 8. Although a person to whom a fiduciary duty is owed is relieved of the responsibility of diligent inquiry into the fiduciary's conduct so long as that relationship exists, when the fact of misconduct becomes apparent, it can no longer be ignored, regardless of the nature of the relationship. *Id.; see Computer Assocs.*, 918 S.W.2d at 456.

■ Ascertaining the date that a claimant knew, or should have known, of an injury generally entails a fact question. *See Childs v. Haussecker*, 974 S.W.2d 31, 37–39 (Tex.1998). However, if reasonable minds could not differ about the conclusion to be drawn from facts in the record, commencement of the limitations period may be determined as a matter of law. *See id.* We conclude Mecom failed to prove as a matter of law that appellants knew, or should have known, of their alleged injury as of December 16, 1998.[5]

Other than recitals of the general law applicable to limitations and the discovery rule, the following is the extent of Mecom's argument in his motion for summary judg-

---

**5.** Because Mecom failed to negate application of the discovery rule, we need not consider appellants' fraudulent-concealment defense to the limitations ground.

ment regarding the accrual date if the discovery rule is applicable:

> Assuming, *arguendo,* that [appellants'] claims against [Mecom] did not accrue when the Trust terminated upon Mrs. Mecom's death on May 4, 1996 (which [Mecom] expressly denies), the evidence proves that accrual occurred no later than December 16, 1998. On that date, [appellants] forwarded [Mecom] a letter advising of concerns with regard to the Trust and their interest in same. See Exhibit H. Prior to sending such missive, [appellants] met with [Mecom's] accountant, West, to discuss the Trust, and were informed that they would not be receiving anything from the Trust.

The referenced meeting occurred in 1998 between appellants, Bill Becknell (Mecom's attorney), and John West (Mecom's accountant). In their depositions taken after this suit was filed, appellants each testified West informed them during the meeting that, in essence, the trust had not been funded properly because the assets were not individually itemized in the trust instrument. Then, appellants wrote and all signed the referenced December 16, 1998 letter, the body of which is pertinent in its entirety:

> Dear Daddy:

> As you know, at your suggestion, we recently had a meeting with Bill Becknell and John West in order to obtain information regarding any interest we may have in the Mary Elizabeth Mecom Trust or in Grandmother's estate. Billy and John suggested that we write this letter to state our objectives and try to get answers to some of our concerns.

> Our objective is to simply be proactive in resolving all the issues concerning Grandmother's estate in the friendliest and beneficial way to all those involved. We also feel that by writing this letter and letting everybody be on the same page we can continue to build and foster our family bond.

> In our last family meeting, it was our understanding that you would keep us updated on the status of Mary Elizabeth Mecom Trust and the Estate. Since that meeting we basically have not been told anything about what was going on with the Trust and the Estate, such as the status of the payment of liabilities and taxes, and the sale of assets. Although we met with Billy and John, they did not provide enough information to answer most of our questions. Therefore, we would like to schedule another meeting in the near future in order to obtain the answers to two basic questions:

> 1. What, if any interest do you feel we have in the Mary Elizabeth Mecom Trust and/or Grandmother's estate; and

> 2. When do you believe these matters will be resolved?

> Daddy, we realize this is your decision, and we are not trying to upset you with these questions. However, we are all adults now with our own financial responsibilities and it is very difficult to plan for the future when we have these unresolved issues hanging over our heads. Specifically, we need to know when we should plan to receive any distribution from the Trust and/or the Estate. If there will be no distribution we should also know this so we can plan accordingly. This question was prompted by your remark at the last family meeting that you wanted to "pass this (the estate) on to us".

> Regardless of how this is resolved we all feel it would be healthy to have a discussion with you just so that we can understand the situation.

> Thanks for your understanding Daddy,

We disagree with Mecom's contention that the information conveyed at the meeting or the substance of the letter conclusively demonstrate any alleged misconduct on Mecom's part was apparent by December 16, 1998. John did testify that, at the time of the meeting, he believed assets existed that were not "in the trust's possession" and he did not trust West and was skeptical of his statements. Katsy also testified that, at the time of the meeting, she considered West's explanation inconsistent with information provided to appellants shortly after Mrs. Mecom's death; i.e., they were beneficiaries of the trust. However, this testimony does not establish appellants knew, as a result of the meeting, that Mecom had committed any wrongdoing. To the contrary, construing John's testimony in context, he actually suggested that West was motivated for his own gain to claim there were no assets in the trust. John opined that West used words such as "technically" and "properly" to describe the alleged non-funding of the trust because he "was trying to figure out how to take assets of the trust . . . and use them to his benefit." John explained that West, as Mecom's financial advisor, had a "carried interest" in their joint business ventures and "for that reason it was in his best interest to keep as many of the assets as possible on his side of the table so he had more to play with." Although John's explanation of his suspicions was not exactly clear, neither he nor Katsy seemed to specifically testify they knew, as a result of the meeting, that West misled them because Mecom individually, or in collaboration with West, had mishandled or misappropriated trust assets.

Although appellants expressed in the subsequent letter to Mecom that they had not received complete information, the letter does not reflect they were aware of any omission rising to the level of a breach of fiduciary duty. To the contrary, a reasonable inference is that appellants believed disclosure would be forthcoming considering they were requesting more information. Although the tone of the letter indicates appellants were delicately inquiring because Mecom is their father, appellants did not accuse him of any misconduct or base their suggestion they might receive no distribution on the fact that he may have wrongfully retained or squandered trust assets. The tenor of the entire letter reflects merely an inquiry about the status of trust assets.

Moreover, John testified that Becknell had been the long-time Mecom family attorney and personally represented John in unrelated matters, John trusted and relied on Becknell, and when Becknell advised appellants to write the letter, John knew Becknell also represented Mecom. The fact that appellants used Mecom's attorney to assist them in requesting information from Mecom supports a reasonable inference appellants did not yet view the relationship with Mecom as adversarial concerning the trust; rather, they wished to enlist Mecom's cooperation to resolve the trust issues.

In the "Statement of Facts" portion of his motion for summary judgment, Mecom suggested that appellants received no response to the letter yet failed to take affirmative action to obtain distribution of trust assets until they filed suit approximately ten years later. We recognize that appellants' testimony was quite vague and non-committal regarding their attempts to learn more information about the trust after sending the letter; they answered many deposition questions by expressing a lack of memory regarding a particular topic, especially dates on which they inquired about the trust.

Nonetheless, John testified that, during this ten-year period, he had casual conver-

sations with Mecom, in which John generally referenced the need to resolve the trust, but John did not make any accusations during these conversations. When asked what actions he took to ensure the assets were distributed to the beneficiaries, John responded that he was a beneficiary, not a trustee, and "what am I supposed to do? ... I don't know." Mary Elizabeth could not recall specific conversations about the trust, but testified that anytime appellants asked Becknell, he reassured them, "he's working on it," although it is unclear whether "he" in this quote meant Becknell or Mecom. Katsy generally testified that, after writing the letter, she asked additional questions and appellants were generally led to believe "these questions will be answered." Katsy also indicated that she trusted her father to take care of her and, as of the date of her deposition, still believed he would do so. This testimony collectively raises an inference that appellants reasonably depended on Mecom, not only as trustee but also as their father, to provide further information and believed it would be forthcoming.

In their testimony collectively, appellants did indicate they were made to feel greedy for asking about the trust, they felt intimidated and uncomfortable "pushing" matters, the situation was "sensitive" considering the trustee is their father, and they tried to obtain answers in a "roundabout" manner because Mecom had delegated his duties to answer questions about the trust to Becknell or West. However, this reluctance to further inquire does not conclusively establish appellants knew Mecom had committed any misconduct. Viewed in the light most favorable to appellants, this evidence also supports an inference that they had a reasonable basis for failing to more firmly pursue distribution of the assets and waiting for Mecom to resolve the trust issues.

In sum, we recognize that the ten years between the letter and the date appellants filed suit is a comparatively lengthy period. Nevertheless, as we have mentioned, Mecom bore the burden to negate application of the discovery rule. *See KPMG Peat Marwick*, 988 S.W.2d at 748. Further, appellants were relieved of the responsibility of diligent inquiry into Mecom's conduct unless "the fact of misconduct" became "apparent." *See S.V.*, 933 S.W.2d at 8. In his motion, Mecom cited no evidence conclusively demonstrating any misconduct was apparent to appellants during this period. Instead, the evidence raises an inference that appellants were still relying on Mecom as fiduciary to explain disposition of the trust assets. Consequently, on the present record, Mecom has not proved appellants' claim is barred by limitations. The evidence presents, at most, a fact issue for the jury regarding the date on which appellants discovered their injuries.

Accordingly, the trial court erred by granting traditional summary judgment based on the statute of limitations relative to appellants' claim for breach of fiduciary duty. We sustain their fourth issue.

## IV. CONCLUSION

We affirm the summary judgment on appellants' conversion and civil-theft claims but reverse the summary judgment on their claim for breach of fiduciary duty and remand for further proceedings.