

# NUMBER 13-18-00296-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

## IN RE COLONEL CLIFTON HOSKINS, INDIVIDUALLY AND AS INDEPENDENT EXECUTOR OF THE ESTATE OF HAZEL HOSKINS

---

## On Petition for Writ of Mandamus.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides**
**Memorandum Opinion by Chief Justice Valdez[1]**

Relator Colonel Clifton Hoskins, individually and as independent executor of the estate of Hazel Hoskins, filed a petition for writ of mandamus and motion for temporary relief in the above cause on June 12, 2018.[2]  Through this original proceeding, relator

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so."); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

[2] This original proceeding arises from trial court cause number 1785 in the County Court of Live Oak County, Texas, and the respondent is the Honorable Joe Loving.  *See* TEX. R. APP. P. 52.2.

seeks to compel the trial court to vacate its April 5, 2018 order denying relator's amended motion for partial summary judgment and to grant the motion, or alternatively, to compel the trial court to vacate its May 10, 2018 order denying permission to appeal the summary judgment order and to grant permission to appeal. We conclude that the trial court abused its discretion in denying the partial motion for summary judgment and that the extraordinary circumstances present in this case merit mandamus relief.

## I. BACKGROUND

The long and torturous history of the underlying family dispute has been detailed in several appellate court opinions. *See Hoskins v. Hoskins*, 497 S.W.3d 490, 491 (Tex. 2016); *Estate of Hoskins*, 501 S.W.3d 295, 298 (Tex. App.—Corpus Christi 2016, no pet.); *Hoskins v. Hoskins*, 498 S.W.3d 78, 79 (Tex. App.—San Antonio 2014), *aff'd*, 497 S.W.3d 490 (Tex. 2016); *see also In re Sw. Ranching, Inc.*, No. 01-23337-C-11, 2013 WL 6670544, at *4 (Bankr. S.D. Tex. Dec. 17, 2013). The following history from the Texas Supreme Court's opinion contains a succinct summary of many of the facts relevant to this proceeding:

> This suit originated as a trust dispute involving Hazel Hoskins and two of her sons—Leonard and [relator]. Hazel and her husband, Lee Roy Hoskins Sr., owned multiple family corporations. One of those companies, Hoskins, Inc. (the Company), held title to a parcel of real property known as Tilden Ranch. Lee Roy died in 1985, and Hazel became the executrix of his estate. Lee Roy bequeathed his portion of the couple's community property to a marital trust of which Hazel was the trustee and beneficiary. Hazel thus owned fifty percent of the Company as trustee and fifty percent individually. As both the trustee and beneficiary of the marital trust, Hazel was prohibited under Lee Roy's will from distributing income or principal to herself from the trust, which included the fifty percent of the Company held in her capacity as trustee. In his will, Lee Roy named his descendants as the trust's residuary beneficiaries.

> After Lee Roy's death, property disputes led to litigation among the Hoskins family members and corporations. One of the family corporations

2

filed for bankruptcy, and in April 2002, Leonard, [relator], and Hazel agreed to settle their claims. The agreement included a provision stating that the parties would attempt to settle any disputes over the agreement's performance and interpretation by mediation and, if unsuccessful, by binding arbitration. The bankruptcy court's order approving the settlement contained a permanent injunction prohibiting the parties from suing each other "on subjects pertaining to the subject matter of this litigation" without first obtaining authority to do so from the bankruptcy court.

In 2008, Leonard sued [relator], Hazel, and the Company, challenging the Company's February 2004 conveyance of Tilden Ranch to [relator]. Leonard alleged that the conveyance was fraudulent, that it was orchestrated by [relator] as de facto trustee, and that Hazel had breached her fiduciary duties to the residuary beneficiaries by failing to properly maintain the trust. Leonard also filed a motion in the probate court to remove Hazel as trustee. In light of the bankruptcy court's injunction, Leonard nonsuited his claims and requested permission from the bankruptcy court to file suit. The bankruptcy court denied the request and ordered the parties to mediation and arbitration in accordance with the settlement agreement. Following an unsuccessful mediation attempt, the bankruptcy court appointed an arbitrator, and in September 2011, the parties signed an arbitration agreement in which they "agreed to a resolution through arbitration pursuant to the provisions of the Texas General Arbitration Act."

Leonard subsequently filed his Complaint in Arbitration, alleging that the Company's conveyance of Tilden Ranch to [relator] "was a choreographed, fraudulent conveyance for substantially less than the fair market value," that the conveyance "should be set aside and declared to be null and void," and that Hazel, aided and abetted by [rellator], breached her fiduciary duties to the Company's owners and the trust's beneficiaries. In addition to declarations that the sale was void due to inadequate consideration, Leonard sought an accounting of all activity by the Company and the trusts created by Lee Roy's will since the settlement, removal of Hazel as executrix of Lee Roy's estate and as trustee of any trusts created by Lee Roy's will, an order setting aside the conveyance, damages, and attorney's fees and costs.

[Relator] and the Company moved for summary judgment, arguing that Leonard's claims, which arose out of the 2004 Tilden Ranch conveyance, were barred by limitations and that Leonard lacked standing to challenge the conveyance because he was not a shareholder in the Company and was not a party to the transaction. After a hearing, the arbitrator granted the motion, dismissing all claims against [relator] and the Company and all claims concerning the 2004 sale of Tilden Ranch. The arbitrator also dismissed all claims against Hazel except for those seeking

Hazel's removal as executrix and trustee and an accounting of the trusts' activity, as well as the requests for damages and attorney's fees. The arbitrator signed a written order to that effect on February 14, 2012, which he sent to the parties along with a letter stating that his ruling was "based both on the statute of limitations and the lack of standing arguments."

. . . .

In February 2013, the arbitrator signed a final arbitration award that dismissed all claims against [relator] and the Company with prejudice and awarded them attorney's fees and costs. He also granted [relator] and the Company's motion to sever Leonard's claims against them from the claims that remained pending against Hazel.

[Relator] and the Company filed a petition in the trial court to confirm the arbitration award pursuant to the TAA, and Leonard filed a motion to vacate the award. His stated grounds for vacatur in the trial court were: the arbitrator lacked authority to enter the award because the bankruptcy court's order compelling arbitration was void; the award was obtained by corruption, fraud, or other undue means; Leonard's rights were violated by the arbitrator's evident partiality; the arbitrator exceeded his power because it was derived from a void court order; the hearing was conducted contrary to statutory requirements; the parties had no agreement to arbitrate; and the arbitrator demonstrated a manifest disregard of the law by ignoring the bankruptcy court's injunction, deciding questions of fact in a summary judgment proceeding, dismissing claims against [relator] that were not pled or argued, and "disregarding established Texas law." The trial court granted [relator] and the Company's petition, denied Leonard's motion to vacate, and confirmed the arbitration award. The trial court also entered findings of fact and conclusions of law, holding in part that "its authority to vacate the Arbitrator's award is limited to the circumstances stated in section 171.088 of the TAA."

*Hoskins*, 497 S.W.3d at 491–93 (footnotes omitted). In that case, the supreme court ultimately held that the Texas Arbitration Act's enumerated grounds for vacating an arbitration award are exclusive. *See id*. at 491. Marcus P. Rogers served as a receiver in the arbitration proceeding and moved to vacate the award but did not appeal the award. *See id.* at 491 n.3.

Meanwhile, in 2013, Leonard's son Rex filed an application in the probate proceeding to remove Hazel as the trustee and to appoint a statutory probate judge. A

4

probate judge was appointed. Rogers appeared in the probate proceeding and sought to confirm the arbitrator's order appointing him as a receiver. In 2015, the probate court appointed Rogers as receiver.

On June 13, 2016, Rogers filed an application for authority to enter into a contingent fee agreement on grounds, inter alia, "that significant claims may exist against [relator] in various capacities." The trial court granted that request on June 16, 2016. Rogers filed a cross claim against many of the family members in the underlying proceeding on September 16, 2017; however, the probate court ordered the parties realigned, making Rogers the plaintiff. Rogers thereafter filed his first amended petition, which is the live pleading under consideration in this original proceeding. Rogers essentially named all family members as defendants. He named relator as a primary defendant individually, as successor trustee of the Hazel Hoskins Living Revocable Trust, as independent executor of Hazel's estate, and as successor trustee of Hazel's revocable trust. Rogers filed claims for breach of fiduciary duty, money received and equitable rescission, constructive trust, declaratory relief, and attorney's fees. His claims primarily concerned the preservation of the assets of the estate and the funding of the residuary trust. He specifically alleged:

> By self-dealing with the assets of Hoskins Inc., including, but not limited to selling himself the Tilden Ranch, including its minerals, for insufficient or no consideration, [relator] breached his fiduciary duties to Cowboy's Estate and the Residuary Trust. [Relator] should be ordered to pay actual damages equal to the value of the assets that he diverted away from Hoskins Inc., the Estate and the Residuary Trust and all income, profits, and appreciation attributable to such assets.

Relator moved for summary judgment on grounds that Rogers's claims were barred by limitations, res judicata, and disclaimer or release. The trial court denied

5

relator's motion and denied relator's motion for permission to file a permissive appeal. This original proceeding ensued. By three issues, relator argues (1) the trial court abused its discretion by denying relator's motion for summary judgment and permitting the receiver to go forward with stale, adjudicated, and released claims; (2) the trial court abused its discretion by denying relator's motion to take a permissive appeal regarding the denial of his motion for partial summary judgment; and (3) he lacks an adequate appellate remedy to cure these errors. This Court requested and received responses to the petition for writ of mandamus from (1) Rogers, and (2) Lee Roy Hoskins Jr., Lee Ann Hoskins Kulka, Andrea Clare Jurica, and Lee Roy "Tito" Hoskins III. Relator has further filed an "omnibus" reply in support of his petition for writ of mandamus.

## II. MANDAMUS REVIEW

Mandamus is an "extraordinary remedy, not issued as a matter of right, but at the discretion of the court." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). "Mandamus relief is proper to correct a clear abuse of discretion when there is no adequate remedy by appeal." *In re Frank Motor Co.*, 361 S.W.3d 628, 630 (Tex. 2012) (orig. proceeding); *see In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 887 (Tex. 2010) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Olshan Found. Repair Co.*, 328 S.W.3d at 888; *Walker*, 827 S.W.2d at 840. Mandamus will not issue "when the law provides another plain, adequate, and complete remedy." *In re Tex. Dep't of Family & Protective Servs.*, 210 S.W.3d 609, 613 (Tex. 2006)

6

(orig. proceeding) (quoting *In re Prudential*, 148 S.W.3d at 135–36). Stated otherwise, mandamus should not issue to correct grievances that may be addressed by other remedies. *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 207 (Tex. 2009) (orig. proceeding); *Walker*, 827 S.W.2d at 840.

In determining whether appeal is an adequate remedy, we consider whether the benefits outweigh the detriments of mandamus review. *In re BP Prods. N. Am., Inc.*, 244 S.W.3d 840, 845 (Tex. 2008) (orig. proceeding); *In re Prudential Ins. Co.*, 148 S.W.3d at 135–36. In *Prudential*, the Texas Supreme Court held that the requirement of an "adequate" remedy on appeal is not subject to simple categories or bright-line rules and, instead, "is simply a proxy for the careful balance of jurisprudential considerations that determine when appellate courts will use original mandamus proceedings to review the actions of lower courts." 148 S.W.3d at 136–37. The test for determining whether an appeal provides an adequate remedy "is practical and prudential." *Id.* at 136. Whether an appellate remedy is "adequate" to preclude mandamus review depends heavily on the circumstances presented and is better guided by general principles than by simple rules. *Id.* at 137. Thus, mandamus is a remedy not restricted by "rigid rules" that are "necessarily inconsistent with the flexibility that is the remedy's principle virtue." *Id.* at 136; *see In re Reece*, 341 S.W.3d 360, 372 (Tex. 2011) (orig. proceeding); *In re McAllen Med. Ctr.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding).

A complete analysis of the adequacy of appellate remedies requires consideration of the degree to which "important substantive and procedural rights" are subject to "impairment or loss." *In re Prudential Ins. Co.*, 148 S.W.3d at 136. While mandamus review of "incidental, interlocutory rulings," which are "unimportant both to the ultimate

7

disposition of the case at hand and the uniform development of the law," would unduly interfere with trial court proceedings and add expense and delay to the process, mandamus review of "significant rulings in exceptional cases" could be necessary. *Id.* As stated by the supreme court:

> Mandamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.

*Id.* Courts should consider "the impact on the legal system" in determining whether mandamus relief is appropriate. *Id.* at 137. Mandamus is a proper vehicle for this Court to "correct blatant injustice that otherwise would elude review by the appellate courts." *In re Reece*, 341 S.W.3d at 374; *see In re Prudential*, 148 S.W.3d at 138.

However, "an appellate remedy is not inadequate merely because it may involve more expense or delay than obtaining an extraordinary writ." *Walker*, 827 S.W.2d at 840; *see In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136; *In re Kansas City S. Indus., Inc.*, 139 S.W.3d 669, 670 (Tex. 2004) (orig. proceeding). Thus, "standing alone, delay and expense generally do not render a final appeal inadequate*." In re Gulf Exploration, L.L.C.*, 289 S.W.3d 836, 843 (Tex. 2009) (orig. proceeding); *see, e.g., In re Essex Ins. Co.*, 450 S.W.3d 524, 528 (Tex. 2014) ("In light of the conflict of interest and prejudice that we have noted above, we conclude that mandamus relief is appropriate to spare the parties and the public the time and money spent on fatally flawed proceedings."); *In re State*, 355 S.W.3d 611, 614–15 (Tex. 2011) ("We believe that the circumstances of this case also make the appellate remedy inadequate because of the enormous waste of judicial and

8

public resources that compliance with the trial court's order would entail."). As succinctly observed by one of our sister courts:

> Although in any case in which a trial court has committed error that might result in reversal on appeal, it could be argued that the parties and the public should be spared the time and expense of awaiting correction of the error on appeal, to conclude that mandamus review is available in any situation where a trial court may have committed reversible error would be to fundamentally alter our system of trial and appeal.

*In re City of Dallas*, 445 S.W.3d 456, 462 (Tex. App.—Dallas 2014, orig. proceeding); *see also In re Jackson*, No. 07-15-00429-CV, 2015 WL 8781272, at *2 (Tex. App.—Amarillo Dec. 11, 2015, orig. proceeding) (mem. op. per curiam). We must be mindful that the benefits of mandamus review "are easily lost by overuse." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 138. An appellate court will exercise mandamus jurisdiction "not merely" because inaction would cause hardship to the parties, but because "special, unique circumstances" mandate the appellate court's intervention. *In re Entergy Corp*, 142 S.W.3d 316, 321 (Tex. 2004) (orig. proceeding); *see In re Cousins*, No. 12-18-00104-CV, __ S.W.3d __, __, 2018 WL 2440463, at *2 (Tex. App.—Tyler May 31, 2018, orig. proceeding).

In this case, relator seeks review of an order denying partial summary judgment "as to all claims concerning Tilden Ranch, including the 2004 sale of the Ranch." Mandamus is generally unavailable when a trial court denies summary judgment, no matter how meritorious the motion. *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 314 (Tex. 2010) (orig. proceeding); *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d at 465–66. This is so because "trying a case in which summary judgment would have been appropriate does not mean the case will have to be tried twice." *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d at 465–66. Only extraordinary circumstances will justify granting mandamus relief

9

when a trial court erroneously denies a motion for summary judgment. *In re United Servs. Auto. Ass'n*, 307 S.W.3d at 314. In *United Services Automobile Ass'n*, the supreme court concluded that extraordinary circumstances merited relief from the denial of a motion for summary judgment where one trial already had been conducted in a forum that lacked jurisdiction and a second trial on a claim barred by limitations "would thwart the legislative intent that non-tolled TCHRA claims be brought within two years." *Id.*

Cases following this decision have examined each case to determine if the rulings subject to review are significant and the circumstances presented are exceptional. *Compare In re S.T.*, 467 S.W.3d 720, 729 (Tex. App.—Fort Worth 2015, orig. proceeding) (granting mandamus review of an order denying summary judgment regarding paternity in a suit affecting the parent-child relationship because issues involving the rights of parents and children should be resolved expeditiously, and delay in such cases often renders appellate remedies inadequate), *and In re Robison*, 335 S.W.3d 776, 783 (Tex. App.—Amarillo 2011, orig. proceeding [mand. denied]) (granting mandamus review of an order denying a motion for summary judgment where "an almost four-year-old personal injury cause of action has been put on hold while the parties litigate an unenforceable settlement agreement" and otherwise, "all parties, including both the trial court and this Court, will be forced to endure the delay, cost, and expense of both the litigation and inevitable appeal of nothing more than an unenforceable oral settlement of the abated personal injury cause of action"), *with In re Ooida Risk Retention Relators Grp., Inc.*, 475 S.W.3d 905, 913 (Tex. App.—Fort Worth 2015, orig. proceeding) (denying mandamus review of the denial of an insurer's motion for summary judgment on a claimant's breach of contract claim), *and In re ConocoPhillips Co.*, 405 S.W.3d 93, 96 (Tex. App.—Houston

10

[14th Dist.] 2012, orig. proceeding) (denying mandamus review of the denial of a partial motion for summary judgment in a class action).

### III. SUMMARY JUDGMENT

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *see Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *Lam v. Phuong Nguyen*, 335 S.W.3d 786, 789 (Tex. App.—Dallas 2011, pet. denied); *see* TEX. R. CIV. P. 166a(b),(c). To accomplish this, the defendant-movant must present summary judgment evidence that conclusively establishes each element of the affirmative defense. *See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008); *D.R. Horton-Tex., Ltd. v. Savannah Props. Assocs., L.P.*, 416 S.W.3d 217, 225–26 (Tex. App.—Fort Worth 2013, no pet.). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *Lam*, 335 S.W.3d at 789. If the movant meets its burden, the burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to one or more elements of the affirmative defense, precluding summary

11

judgment. *Id.* The evidence raises a genuine issue of material fact if reasonable and fair-minded jurors could differ in their conclusions considering all the summary judgment evidence. *Id.*

As a threshold matter, the real parties in interest assert that relator's motion for summary judgment was defective because it failed to identify the specific causes of action challenged. "[A] motion for summary judgment must itself expressly present the grounds upon which it is made." *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993); *see Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 609 (Tex. 2012). "A motion must stand or fall on the grounds expressly presented in the motion." *McConnell*, 858 S.W.2d at 341. Even if the non-movant fails to except or respond, if the grounds for summary judgment are not expressly presented in the motion for summary judgment itself, the motion is legally insufficient as a matter of law. *Id.* at 342.

Here, relator's motion for partial summary judgment specifically seeks summary judgment on "all claims concerning Tilden Ranch, including the 2004 sale of the Ranch to [relator]." The motion expressly asserts that these claims are barred by res judicata and limitations. The motion is twenty-two pages long, excluding the extensive evidence attached to the motion, and thoroughly briefs the sequence of events pertaining to Tilden Ranch and the applicable law regarding receivers, limitations, and res judicata. We conclude that the motion for summary judgment expressly presents the grounds upon which it is made, and accordingly, we proceed to address the merits. *See id.*

### IV. SUMMARY JUDGMENT ON THE STATUTE OF LIMITATIONS

Because it is dispositive, we begin our analysis regarding whether the trial court abused its discretion by denying summary judgment on the Tilden Ranch claims with the

12

statute of limitations. Relator contends that Rogers's claims regarding Tilden Ranch are time-barred. He asserts that the injuries over which the Rogers sues "occurred as early as 1994 and, at the latest, by 2004." In 1994, Hazel and her sons filed an affidavit in the deed records stating that the trusts were unnecessary and had not been funded. Relator asserts that this affidavit proves that the parties were aware that Hazel had possession of the estate assets, including Tilden Ranch, at that time. In 2004, relator purchased the Tilden Ranch from Hoskins, Inc. Rogers filed his first pleadings in the underlying matter in 2016.

Relator asserts generally that Rogers's claims have a four-year statute of limitations that runs from the date the cause of action accrues. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.001, 16.004 (West, Westlaw through 2017 1st C.S.); *see also id.* § 16.051 (West, Westlaw through 2017 1st C.S.) (providing that every action for which no express period applies "must be brought not later than four years after the day the cause of action accrues"); TEX. BUS. & COM. CODE ANN. § 27.01 (West, Westlaw through 2017 1st C.S.) (providing cause of action for frauds that involve real estate transactions); *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617–18 (Tex. 2007) (holding that actions seeking to set aside voidable deeds are required to be filed no later than four years after the cause of action accrues). According to relator, "[e]very one of the injuries of which the Receiver complains occurred at least 14 and as much as 24 years ago." In response, Rogers alleged that "[a]ll applicable limitations periods have been tolled by the discovery rule, the bankruptcy court's anti-suit injunction, . . . fraudulent concealment, . . . failure to disclose, and Hazel's incapacity."

In this case, Rogers serves as a receiver. When a receiver's cause of action is identical to, and was substituted for, the claimant's causes of action against a defendant, the date of the claimant's suit controls for purposes of limitations. *Johnston v. Crook*, 93 S.W.3d 263, 269 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); *cf. Foust v. Estate of Walters*, 21 S.W.3d 495, 501 (Tex. App.—San Antonio 2000, pet. denied) (stating, in the context of analyzing misnomer, "If the nature of the suit against the defendants remains unchanged, the substitution of parties–plaintiff does not constitute a new suit").

**A. Accrual**

When a defendant moves for summary judgment on the affirmative defense of limitations, it must conclusively establish the elements of that defense. *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 833 (Tex. 2018); *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). This requires conclusive proof of when the plaintiff's cause of action accrued. *Schlumberger Tech. Corp.*, 544 S.W.3d at 834. Generally, the question of when a claim accrues is decided as a question of law. *Town of Dish v. Atmos Energy Corp.*, 519 S.W.3d 605, 609 (Tex. 2017). A cause of action accrues when a wrongful act causes a legal injury without regard to when the plaintiff learns of that injury or whether all resulting damages have occurred. *Id.*

**B. Discovery Rule**

If the plaintiff has pleaded the discovery rule to toll limitations, the defendant seeking summary judgment must also negate the discovery rule as a matter of law. *Schlumberger Tech. Corp.*, 544 S.W.3d at 834.[3] The defendant may do so by

---

[3] We assume, without deciding, that the discovery rule would apply in this case. "Texas courts have refused to apply the discovery rule to claims arising out of probate proceedings . . . even in the face of allegations of fraud." *Little v. Smith*, 943 S.W.2d 414, 420 (Tex. 1997).

14

establishing either that the discovery rule is inapplicable or that the summary-judgment evidence negates it, i.e., there is no genuine issue of material fact regarding when the plaintiff discovered or, in the exercise of reasonable diligence, should have discovered the nature of the plaintiff's injury and that the plaintiff failed to file suit within the applicable number of years from that date. *See id.*; *KPMG Peat Marwick*, 988 S.W.2d at 748; *Weaver v. Witt*, 561 S.W.2d 792, 793–94 (Tex. 1977); *United Healthcare Servs., Inc. v. First St. Hosp. LP*, No. 01-17-00237-CV, __ S.W.3d __, at __, 2018 WL 6215960, at *7 (Tex. App.—Houston [1st Dist.] Nov. 29, 2018, no pet. h.).

The discovery rule defers accrual of a claim until the injured party learned of, or in the exercise or reasonable diligence should have learned of, the wrongful act causing the injury. *Cosgrove v. Cade*, 468 S.W.3d 32, 36 (Tex. 2015). The discovery rule is limited to "circumstances where 'the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable.'" *Id.* (quoting *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996)). An injury is not inherently undiscoverable when it could be discovered through the exercise of reasonable diligence. *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 66 (Tex. 2011).

Courts have used varying terminology to express and apply the discovery rule. *See United Healthcare Servs., Inc.*, 2018 WL 6215960, at *9 (discussing the discovery rule in terms of reasonable diligence, constructive notice, and inquiry notice). Under the inquiry-notice approach, "knowledge of facts that could cause a reasonably prudent person to make an inquiry that would lead to discovery of the cause of action is in the law equivalent to knowledge of the cause of action for limitations purposes." *See Town of Dish*, 519 S.W.3d at 613. Once a party is on inquiry notice of an alleged fraud, the

15

limitations period begins. *See Sandt v. Energy Maint. Servs. Grp. I, LLC*, 534 S.W.3d 626, 642 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (concluding that nature of allegations in publicly available court filings put party on inquiry notice of allegations and obligated party to investigate). Reasonable diligence requires "sophisticated" parties in a business transaction to "acquaint themselves" with readily accessible, publicly available records. *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 57 (Tex. 2015). Court records are an example of publicly available records that may need to be reviewed by a sophisticated party. *Hooks*, 457 S.W.3d at 59.

### C. Fraudulent Concealment

Fraudulent concealment is based upon the doctrine of equitable estoppel. *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983). Fraudulent concealment estops a defendant to rely on the statute of limitations as an affirmative defense when the defendant owes a duty to disclose but fraudulently conceals the existence of a cause of action. *Id.* A party asserting fraudulent concealment as an affirmative defense to the statute of limitations has the burden to raise it in response to the summary judgment motion and to come forward with summary judgment evidence raising a fact issue on each element of the fraudulent concealment defense. *KPMG Peat Marwick*, 988 S.W.2d at 749. The party asserting fraudulent concealment must establish that the defendant (1) actually knew a wrong occurred; (2) had a fixed purpose to conceal the wrong; and (3) did conceal the wrong. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011). "Fraudulent concealment only tolls the running of limitations until the fraud is discovered or could have been discovered with reasonable diligence." *B.P. Am. Prod. Co.*, 342 S.W.3d at 67.

16

**D. Injunction**

Rogers argues that the statute of limitations was tolled by the anti-suit injunction issued by the bankruptcy court. Under a general equitable rule, when "a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time in which he is thus prevented should not be counted against him in determining whether limitations have barred his right." *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex.1991); *Landers v. Nationstar Mortgage, LLC*, 461 S.W.3d 923, 926 (Tex. App.—Tyler 2015, pet. denied); *Pioneer Bldg. & Loan Ass'n v. Johnston*, 117 S.W.2d 556, 559 (Tex. Civ. App.—Waco 1938, writ dism'd).

**E. Analysis**

We conclude that the relator has conclusively established the elements of the affirmative defense of limitations. *Schlumberger Tech. Corp.*, 544 S.W.3d at 833. The claims accrued here, as a matter of law, in 2004, at the latest, when relator purchased the Tilden Ranch. We note that the Hoskins parties argue, in fact with regard to relator's argument that the 1994 event controls accrual, that a "1994 event cannot give notice of an injury that accrued in 2004." We further conclude that relator has further established that the tolling doctrines raised by the real parties are either inapplicable or the summary judgment evidence negates them. *See id.* There is no genuine issue of material fact regarding when Rogers discovered or, in the exercise of reasonable diligence, should have discovered the nature of the alleged injury and that he failed to file suit within the applicable number of years from that date. *See id.*; *KPMG Peat Marwick*, 988 S.W.2d at 748; *Weaver*, 561 S.W.2d at 793–94.

17

Here, the transaction at issue, relator's purchase of Tilden Ranch, occurred in 2004, more than twelve years before Rogers asserted his claims in this proceeding. The deed was publicly recorded. The transaction was expressly at issue in the 2008 lawsuit and was litigated again during the arbitration proceedings and was disposed of on limitations grounds in the arbitration in 2012. The claims made against relator in the 2008 lawsuit and the complaint in arbitration were substantially similar, if not identical, to the claims Rogers has made in the underlying lawsuit. For instance, the 2011 complaint in arbitration referenced the 2004 sale and the 2008 lawsuit against relator and others and alleged, among other things, that the February 19, 2004 "sale" of the Tilden Ranch "was a choreographed, fraudulent, conveyance for substantially less than the fair market value of the property" and that "the purported consideration for the conveyance, in part, is believed to be a sham." These are the same claims Rogers has made here. The deed was publicly recorded, these court filings were public, and Rogers served as a receiver in the arbitration proceedings and would certainly, personally, have been on notice of these claims at that time.[4] *See Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981) (stating that a person is charged with constructive knowledge of the actual knowledge that one could gain by an examination of the public records); *Poag v. Flories*, 317 S.W.3d 820, 827 (Tex. App.—Fort Worth 2010, pet. denied) (same). Further, to the extent that the real parties argue that relator was a fiduciary and a fiduciary's misconduct is inherently undiscoverable, we note that "when the fact of misconduct becomes apparent it can no

_____

[4] The real parties also assert that the statute of limitations was tolled by Hazel's incapacity and an "anti-suit injunction" issued by the bankruptcy court. In terms of Hazel's incapacity, the real parties fail to explain how Hazel's incapacity prevented Rogers from filing suit in a timely manner. And, the injunction issued by the bankruptcy court did not prohibit a lawsuit, but instead merely required Rogers to seek the bankruptcy court's permission to file suit, which he did not do until 2016. These allegations, in sum, fail to raise a fact issue pertaining to the expiration of limitations.

18

longer be ignored." *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996); *see Cluck v. Mecom*, 401 S.W.3d 110, 118 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

We conclude that the trial court abused its discretion by denying the summary judgment at issue here, and we sustain relator's first issue.

## V. ADEQUATE REMEDY AT LAW

Reviewing the specific circumstances of this case, both legal and factual, we conclude that relator has shown that extraordinary circumstances justify granting mandamus relief in this case*. See, e.g., In re United Servs. Auto. Ass'n*, 307 S.W.3d at 314. The matters at issue here regarding Tilden Ranch have been repeatedly litigated and have been determined in an arbitration proceeding and relator should not be subject to defending against the same claims in a subsequent suit more than a decade after the transaction at issue and well past the expiration of the statute of limitations. *See id.* Accordingly, we sustain relator's third issue pertaining to the adequacy of a remedy by appeal, and we need not address relator's second issue pertaining to the trial court's denial of a permissive appeal. *See* TEX. R. APP. P. 47.1, 47.4.

## VI. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the responses, the reply, the record, the standard of review, and the applicable law, is of the opinion that the relator has met his burden to obtain relief. Accordingly, we lift the stay previously imposed in this case. *See id.* R. 52.10(b) ("Unless vacated or modified, an order granting temporary relief is effective until the case is finally decided."). We conditionally grant the petition for writ of mandamus and direct the trial court to vacate its order denying the motion for summary judgment and to issue an order granting the

19

summary judgment. Our writ will issue only if the trial court fails to act in accordance with this opinion.

/s/ Rogelio Valdez
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
27th day of December, 2018.