# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00109-CV

---

**Darrell Williams, in his Capacity as Trustee; as Independent Executor of the Estate of Thea Elaine Williams-Douglas; and Individually, Appellant**

**v.**

**Marcia Williams, as Agent for Amira Elaine Douglas, Appellee**

---

### FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
### NO. C-1-PB-20-001470, THE HONORABLE GUY S. HERMAN, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Darrell Williams appeals from the probate court's final summary judgment that was rendered against him in his individual capacity and in his capacities as trustee of the Douglas Family Trust (the Trust) and independent executor of the estate of his sister Thea Elaine Williams-Douglas (Decedent). Without stating its reasoning, the trial court rendered final summary judgment for Marcia Williams, as agent for Decedent's daughter Amira Elaine Douglas, and awarded actual damages of $397,472.50, attorney's fees of $10,177.78, and court costs.[1] On appeal, Darrell challenges the grounds raised in Marcia's motion for summary judgment and the awarded damages and attorney's fees. For the following reasons, we reverse the final summary judgment and remand the case to the probate court.

---

[1] Because individuals involved in this case have the same last name, we refer to them by their first names. References to Darrell include each of the capacities in which he was sued.

## BACKGROUND

Decedent died in September 2010, and her will was admitted to probate in December 2010. Darrell was appointed as independent executor of Decedent's estate. Under the terms of her will, the residue of Decedent's estate was to fund the Trust for the "health, education, support, and maintenance" of Amira and Decedent's other child, Khari Omer Douglas." In January 2011, Darrell filed an inventory that valued the estate assets at $203,000. Decedent also had life insurance policies that listed the Trust as the beneficiary.

In March 2020, Marcia's attorney sent a written demand to Darrell to provide a "written statement of accounts covering all transactions since the creation of the Trust."[2] *See* Tex. Prop. Code §§ 113.151(a) (authorizing beneficiary to request "written statement of accounts covering all transactions since the last accounting or since the creation of the trust, whichever is later"), .152 (listing required contents of accounting). In July 2020, Darrell had not complied with this request, and Marcia sued Darrell for breach of fiduciary duties, alleging that he had breached his duties to administer the Trust in good faith, to account, and to disclose. In September 2020, Darrell's attorney provided an unsigned document that included a draft "Independent Accountant's Report" (the Accounting Report) that was purportedly prepared by an accountant, but Darrell's attorney acknowledged that the Accounting Report did not satisfy the statutory requirements for providing an accounting. *See id.* § 113.152.

The Accounting Report states in the summary section that the "[t]otal funds available for trust corpus" was $397,472.50, that the Trust had earned interest of $36,906.78, that

---

[2] The letter references attached exhibits, but the appellate record does not include those exhibits. According to the letter, the exhibits included a notification from the IRS that it had issued a levy against Amira for unpaid taxes related to income that she received and a January 2020 statement from her college showing a balance owed of $46,875.09.

2

expenses of $4,287.76 had been paid out of the Trust, that the Trust had distributed $433,256.90 for the support of Khari and Amira, that Darrell had paid $7,236.90 out of his own personal funds for the benefit of Khari and Amira, and that the balance of the trust corpus as of December 31, 2019 was $599.02. It also provided back-up information about the transfers of funds, transactions, and bank accounts related to the Trust. According to the Accounting Report, the balance of "unaccounted for funds" was $3,472.50.

Shortly after receiving the Accounting Report, Marcia filed a combined motion for traditional and no-evidence summary judgment. Marcia asserted that she was entitled to judgment as a matter of law on her claims for breach of fiduciary duty to account and duty of disclosure in the amount of damages of $397,472.50 because that is the amount that Darrell admitted was "available for trust corpus" and Darrell had "wholly failed to account for this amount." Marcia also asserted that she was entitled to no-evidence summary judgment because "Darrell has no evidence showing that his self-dealing transactions with Trust assets were fair and equitable to Amira" and, on this ground, sought $320,146.50, which was the total amount that she alleged were "admitted self-dealing transactions" from the Accounting Report. Marcia argued that Darrell bore the burden to prove that these transactions were fair and equitable to Amira and that he had no evidence to carry this burden.

Marcia supported her motion for summary judgment with evidence, including copies of the Decedent's will and testamentary trust (the Trust Instrument), the filed inventory of estate assets valued at $203,000, correspondence between Amira and Darrell about her requests for funds, counsel's letter requesting an accounting from Darrell,[3] an email from Darrell's

_____

[3] As we noted earlier, the letter references attached exhibits, but the exhibits are not in the appellate record.

attorney acknowledging non-compliance with the statutory requirements of an accounting, the Accounting Report, an unsworn declaration by Amira, and an affidavit on Marcia's incurred attorney's fees.

Darrell did not file a response to the motion and, following a hearing, the trial court granted the motion without stating its reasoning and awarded Marcia's requested actual damages of $397,472.50, attorney's fees of $10,177.78, and court costs. Darrell filed a motion for new trial, which was overruled by operation of law.[4] This appeal followed.

## ANALYSIS

In his issues on appeal, Darrell contends that the probate court erred in granting summary judgment and challenges the grounds that Marcia raised in her combined motion for traditional and no-evidence summary judgment and the awarded damages and attorney's fees.

### Standards of Review

We review summary judgments de novo, taking as true evidence favorable to the nonmovant and indulging reasonable inferences and resolving doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A motion for summary judgment must stand or fall on the grounds expressly presented in the motion, and a trial court considering such a motion is restricted to the issues presented in the motion, response, and replies. *See* Tex. R. Civ. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341–42 (Tex. 1993). If the trial court does not specify the grounds for its summary judgment,

___

[4] In his motion for new trial, Darrell contended that he and his attorney did not receive adequate notice of the hearing on the motion for summary judgment and referenced newly discovered evidence. Darrell's attorney, however, appeared for the hearing and did not ask for a continuance or motion for leave to file a response. On appeal, he has not raised a complaint about adequate notice of the hearing.

"we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

A traditional summary judgment is proper if the movant submits sufficient evidence to establish that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014); *Knott*, 128 S.W.3d at 215–16. If the movant meets this burden, the burden shifts to the nonmovant to raise a fact issue. *Amedisys*, 437 S.W.3d at 511. A movant seeking a no-evidence summary judgment must assert that there is no evidence to support an essential element of the nonmovant's claim or defense on which the nonmovant would have the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i); *Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). Once the motion is filed, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact as to each challenged element. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

Because "[s]ummary judgments must stand on their own merits," *Rhone–Poulenc Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *see McConnell*, 858 S.W.2d at 341–42, the nonmovant on appeal need not have responded to a traditional motion for summary judgment to contend that the movant's summary judgment proof was insufficient as a matter of law, *see Amedisys*, 437 S.W.3d at 511 (noting that if movant fails to meet burden, "the burden does not shift and the non-movant need not respond or present any evidence"); *Rhone-Poulenc*, 997 S.W.2d at 223 (explaining that on appeal, "movant still bears the burden of showing that

5

there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law").

Further, a nonmovant need not have responded to a no-evidence motion for summary judgment to attack the sufficiency of the motion on appeal. *See Nowak v. DAS Inv. Corp.*, 110 S.W.3d 677, 680 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (stating that non-movant need not respond to no-evidence motion when "motion should not have been filed at all" and explaining "[t]hat is when movant files a no-evidence summary judgment on claims or affirmative defenses for which it has the burden of proof"); *Cargill, Inc. v. Merit Distrib. Servs.*, No. 03-02-00718-CV, 2003 Tex. App. LEXIS 4598, at *10 (Tex. App.—Austin May 30, 2003, no pet.) (mem. op.) (limiting non-movant, who did not respond to motion for no-evidence summary judgment, to attacking sufficiency of motion on appeal); *Cuyler v. Minns*, 60 S.W.3d 209, 213–14 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (noting that "challenge to a 'no-evidence' summary judgment motion may be presented for the first time on appeal" and observing that "there is nothing onerous or unreasonable about requiring the movant to comply with the rule under which he seeks to win a lawsuit without a trial" (citing *McConnell*, 858 S.W.2d at 340)). Guided by these standards, we address Darrell's issues.

*Traditional Motion for Summary Judgment*

To be entitled to traditional summary judgment on her claims of breach of fiduciary duties, Marcia had to establish as a matter of law: (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages from the breach. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (listing elements of claim for breach of fiduciary duty). In his first issue, Darrell challenges Marcia's evidence to

prove the elements of causation and damages, arguing that Marcia did not present any evidence of proximate cause or damages and that her evidence raises fact issues as to the existence and the amount of any damages. He also argues that the trial court erred by granting Marcia's traditional motion for summary judgment because no damages are allowed for breach of the statutory duty to account and that Marcia failed to conclusively prove any breach of the common law duty of disclosure.

Marcia's traditional motion for summary judgment asserted that Darrell breached his fiduciary duties to account and disclose, *see* Tex. Prop. Code § 113.152 (providing required contents of accounting); *Montgomery v. Kennedy*, 669 S.W.2d 309, 313 (Tex. 1984) (stating that trustees and executors of estate owed beneficiary "fiduciary duty of full disclosure of all material facts known to them that might affect [beneficiary]'s rights"), and, based on those breaches, sought damages of $397,472.50 because that is the amount that Darrell admitted was "available for trust corpus" in the Accounting Report and Darrell had "wholly failed to account for this amount." The statutory remedy for failure to account, however, is to compel the accounting, not damages.[5] *See* Tex. Prop. Code § 113.151(a); *Texas State Bank v. Amaro*, 87 S.W.3d 538, 543 (Tex. 2002) (explaining that "[n]owhere does section 113.152 mention investment philosophy or potential tort liability to the beneficiary with regard to an accounting" and that "these determinations are not components of an accounting"); *cf.* Tex. Prop. Code § 114.001(c) (providing that trustee is liable for "any damages resulting from" breach of trust, including lost trust property, profit to trustee from breach, and profit trust would have realized without breach).

---

[5] Marcia's motion for summary judgment did not request that the probate court compel an accounting. *See* Tex. Prop. Code § 113.151(a) (authorizing beneficiary to file suit to compel trustee to deliver written statement of account to beneficiaries).

Further, we must view the Accounting Report in the light most favorable to Darrell, taking as true its content that is favorable to him and indulging reasonable inferences and resolving doubts in his favor. *See Dorsett*, 164 S.W.3d at 661. Taking the content of the Accounting Report that is favorable to Darrell as true, its summary and the underlying information provided about transactions and transfers over the Trust's ten-year life support a finding that Darrell distributed the Trust's funds for the benefit of Amira and her brother. The summary states that the Trust had distributed $433,256.90 for the support of Khari and Amira with a remaining balance as of December 31, 2019, of $599.02. Back-up information about the transfers of funds and transactions for the benefit of the beneficiaries and bank accounts related to the Trust, Darrell, and Amira also were included. According to the Accounting Report, the total amount of trust funds had been accounted for except $3,472.50. Applying the applicable standard of review, we conclude that the Accounting Report did not establish as a matter of law that Darrell's failure to comply with Marcia's demand for an accounting caused damages or that he failed to disclose material information that caused damages. *See Fleming v. Curry*, 412 S.W.3d 723, 737 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (explaining that fiduciary's accounting that provided "insufficient detail" about expenses did not conclusively establish breach of fiduciary duty and "does not necessarily mean that [he] failed to make a good-faith effort to fully inform" a beneficiary of "all material information concerning 'the nature and effect of the transactions'").

As to other summary judgment evidence, Amira declared that she had been "forced to take out thousands of dollars in loans to fund [her] education and support," but Marcia did not present evidence of what amounts Amira did not receive from the Trust, and Amira's declaration supports a reasonable inference that she had received funds from the Trust. In her

8

declaration, she referred to requests for funds that she had made to Darrell "[o]ver the years since [her] mother's death" and to Darrell's "delay and outright refusal *at times* to provide the requested funds." Reasonable inferences from this statement are that Darrell belatedly provided funds from the Trust to Amira and that he had provided funds from the Trust at other times. *See Dorsett*, 164 S.W.3d at 661. The correspondence between Amira and Darrell also supports a reasonable inference that at least some funds were transferred to her for her "health, education, support, and maintenance" during the Trust's ten-year existence.[6]

---

[6] The correspondence between Darrell and Amira from newest to oldest was as follows:

(1) an email exchange on September 4, 2018: Amira sent an email stating that she was in her last year of college and asking for her rent money to be sent on that day to avoid late fees and Darrell responded within a short time by asking her to send him a copy of her lease.

(2) an email exchange on August 21, 2018: Amira sent an email with the subject of the email "Budget" and in the body of the email, she referenced that she had attached a budget and that she was currently seeing a counselor "and ensuring" that she was "following the guidelines" Darrell had set for her. Darrell responded two hours later by asking her how many counseling sessions she had that summer. Amira responded a short time later that she was still in counseling and planned to continue "all year" and that her rent "went up that is why the budget went up." Darrell then responded two hours later by asking her if the tuition was for a semester or a year.

(3) An email from Amira to Darrell on April 24, 2018, referencing his statement that she would have the money to pay her college by the 20th and asking when she would have the "rest of the money to pay" her college.

(4) an email from Amira to Darrell on April 18, 2018, updating Darrell as to when she would graduate and advising him that she was "currently applying to both jobs and internships" and that she would "pay half of [her] summer rent."

(5) an email from Amira to Darrell on April 17, 2018, referencing the "lack of payment on this semester and last semester" and asking him when he thought she could have her balance paid so she could register.

9

As support for her position that Darrell "should be charged 'with all assets coming into his hands, the disposition for which he cannot account,'" Marcia relies on *Corpus Christi Bank & Trust v. Roberts*, 587 S.W.2d 173, 181 (Tex. App.—Corpus Christi 1979), *aff'd*, 597 S.W.2d 752 (Tex. 1980).[7]   But that case concerned a dispute that arose after a trust terminated by its own terms and the appeal was from a final judgment following a jury trial. *Id.* at 176.   When the trust was terminated, the trustee conveyed some of the trust properties to the

(6) an email exchange on April 16, 2018:  Amira sent an email referencing a hold on her college account due to a balance owed and a few minutes later, Darrell responded that he "anticipated paying it around the 20th" and asking her if she could make that work.

(7) an email from Amira to Darrell on April 12, 2018, asking him to deposit money in her account so that she could purchase a prescription that she needed.

(8) an email from Amira to Darrell on January 29, 2018, providing her renters insurance receipt and her budget.

(9) an email from Amira's college to her on June 6, 2017, referencing her outstanding summer balance.

(10) an email exchange on May 9, 2017:  Amira sent an email to Darrell listing amounts owed for college by semester, asked for $17,104.99 to be transferred to her account, and asked for an update "on how much money" was left in the Trust.  She stated that "[f]or some reason there is still a balance from the fall of 2016 of $1,849" in addition to money owed for the spring and that the "delay in paying every semester" had made it "impossible" to get into the classes that she needed and that she would be a junior so there were "critical classes" that she needed to take.  Darrell responded that day: "No…I have been very clear on where I stand on things."

[7]  Marcia also relies on *In re Estate of Irving*, No. 13-20-00081-CV, 2021 Tex. App. LEXIS 2501 (Tex. App.—Corpus Christi–Edinburg Apr. 1, 2021, no pet.) (mem. op.).  That case, however, involved summary-judgment proof of specific unauthorized expenditures or transactions that were documented in bank statements and the independent administrator's documented fee and the amounts that the trial court awarded included the amount of the administrator's fee based on a fee-forfeiture claim and the amount of unauthorized expenditures or transactions. *See id.* at *5–6, *14–20.  Here, in contrast, when viewed in Darrell's favor, the Accounting Report reflects that the transfers and transactions were authorized because they were for the benefit of Amira and her brother and supports a reasonable inference that Darrell did not receive a fee for serving as the trustee.  The report states that "[r]emunerations to the trustee for his management of the trust were not observed and are not discussed in this report."

10

beneficiaries but not all of the trust income, and the validity and accuracy of the accounting provided by the trustee was at issue during trial. *Id.* at 184. On appeal, our sister court concluded that "there is ample evidence from which the jury could reasonably conclude that the trustee did not pay to the beneficiaries all of the trust funds to which they were entitled." *Id.* In contrast, this appeal is from summary judgment and we must view the evidence, including the Accounting Report, in the light most favorable to Darrell.

Marcia also argues that the probate court's award is supported by her alternative pleaded remedy for equitable fee forfeiture and that her summary judgment motion was broad enough to cover this alternative remedy. *See Dyke v. Hall*, No. 03-18-00457-CV, 2019 Tex. App. LEXIS 9136, at *30 (Tex. App.—Austin Oct. 17, 2019, no pet.) (mem. op.) ("[A] trial court may impose [equitable] fee forfeiture based on a claim of breach of fiduciary duty regardless of whether the client proves that he sustained actual damages as a result of the breach." (quoting *Burrow v. Arce*, 997 S.W.2d 229, 240 (Tex. 1999))). Marcia, however, did not raise or provide argument in her motion as to why she was entitled to recover as a matter of law on her claim for equitable fee forfeiture. *See Rhone-Poulenc*, 997 S.W.2d at 223 (noting that summary judgment must stand on its own). Further, Marcia's evidence did not establish as a matter of law that Darrell charged fees to the Trust for his services that would be subject to equitable fee forfeiture.[8]

For these reasons, we conclude that the probate court erred in granting Marcia's motion for traditional summary judgment and sustain Darrell's first issue.

---

[8] A reasonable inference from the Accounting Report when viewed in favor of Darrell was that Darrell did not receive compensation for serving as the Trustee.

11

*No-Evidence Motion for Summary Judgment*

In his second issue, Darrell argues that the judgment cannot be affirmed based on Marcia's no-evidence summary judgment because Marcia could not use a no-evidence motion to obtain an award of damages, that she bore the burden of proof as to damages, and that her own evidence raised fact issues as to whether some of the transactions in question were self-dealing and, even if they were, whether they were fair and equitable to Amira.[9] Marcia sought no-evidence summary judgment based on Darrell's appointment as a trustee under the Trust Instrument and alleged "self-dealing transactions" listed in the Accounting Report. She contended that it was Darrell's burden to prove that the identified transactions were just and equitable and sought damages of $320,146.50, which she alleged was the total amount of those transactions.[10]

Marcia has not cited, and we have not found, authority that would allow a trial court to render a no-evidence summary judgment awarding damages for breach of fiduciary duty that is dependent on the movant's own evidence to identify alleged self-dealing transactions to

---

[9] Darrell also argues that the Trust Instrument lifted the prohibition on self-dealing, but because Darrell did not respond to Marcia's motion for no-evidence summary judgment, we may not consider this argument on appeal as a ground for reversal. *See Cargill, Inc. v. Merit Distrib. Servs.*, No. 03-02-00718-CV, 2003 Tex. App. LEXIS 4598, at *10 (Tex. App.—Austin May 30, 2003, no pet.) (mem. op.) (limiting non-movant, who did not respond to motion for no-evidence summary judgment, to attacking sufficiency of motion on appeal).

[10] Marcia asserted that the following transactions that were listed on the Accounting Report involved self-dealing by Darrell: (i) transfers to trustee for benefit of Amira: $58,409; (ii) estimated support of Amira while residing with trustee: $29,767.50; (iii) legal fees: $30,000; (iv) support paid for beneficiaries while residing in Decedent's home: $48,000; (iv) total transferred from Trust's financial accounts into Darrell's personal accounts: $126,890; and (v) transfers to Darrell's personal account from Amira's personal account: $27,080. From this list, it appears that Marcia overstated the total amount of the identified transaction by counting $58,409 twice.

shift the burden of proof as to those transactions.[11]   *See* Tex. R. Civ. P. 166a(i); *Nowak*, 110 S.W.3d at 680 (explaining that non-movant need not file a response to improper or defective no-evidence motion, including no-evidence motion on claims for which movant bore burden of proof); *see also Hawes v. Link Ministries, Inc.*, No. 07-18-00407-CV, 2020 Tex. App. LEXIS 6465, at *14–15 (Tex. App.—Amarillo Aug. 13, 2020, pet. denied) (mem. op.) (in case where non-movant failed to file response to motion for no-evidence summary judgment, concluding that movant had not established entitlement to no-evidence summary judgment as matter of law whether court concluded that motion was procedurally defective or inadvertently raised fact issue).

Further, even if it were proper to consider Marcia's evidence in the context of her motion for no-evidence summary judgment to shift the burden to Darrell to prove that the identified transactions were fair and equitable, Marcia would still have the burden of proof as to any damages. *See Parker*, 514 S.W.3d at 220 (listing damages as element of breach of fiduciary duty claim); *Nowak*, 110 S.W.3d at 680 (stating that non-movant need not respond to motion for no-evidence summary judgment on claims for which movant has burden of proof). Marcia argues that we should affirm on liability based on her no-evidence motion and remand for a determination of damages, but such a disposition would be improper because the damages for

---

[11]   Although Marcia contends that her evidence of the Trust Instrument and the Accounting Report shifted the burden to Darrell as to the identified transactions, she argues that that this Court may not consider this same evidence as creating a fact issue. As support for this position, Marcia cites *Dyer v. Accredited Home Lenders, Inc.*, No. 02-11-00046-CV, 2012 Tex. App. LEXIS 877 (Tex. App.—Fort Worth Feb. 2, 2012, pet. denied) (mem. op.). That case, however, stated that when evidence is attached to a no-evidence motion, the trial court may consider the evidence "in the limited circumstance when the evidence raises a fact issue." *Id.* at *8. Applying that opinion's reasoning here, we may consider the Trust Instrument and the Accounting Report to raise fact issues about whether the transactions were fair and equitable to Amira. *See id.*

this theory of recovery are unliquidated. *See* Tex. R. App. P. 44.1(b). As one of our sister courts has explained,

> While a trial court may grant summary judgment on liability, but submit any issue relating to damages to a jury for trial, an appellate court may not render such a judgment upon a finding of error. If liability is contested, an appellate court may not remand and order a trial solely on unliquidated damages; the whole action must be remanded for further proceedings.

*Arthur v. Uvalde Cnty. Appraisal Dist.*, No. 04-14-00533-CV, 2015 Tex. App. LEXIS 5125, at *31 (Tex. App.—San Antonio May 20, 2015, pet. denied) (mem. op.) (citing Tex. R. App. P. 44.1(b); Tex. R. Civ. P. 166a(a)), *abrogated on other grounds by Town of Shady Shores v. Swanson*, 590 S.W.3d 544 (Tex. 2019); *see Clear Lake Ctr., L.P. v. Garden Ridge, L.P.*, 416 S.W.3d 527, 545 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (noting that Rule 44.1(b) "applies when we reverse a summary judgment because of the plaintiff's failure to conclusively prove [unliquidated] damages" and that because liability was contested, entire summary judgment must be reversed); *see also Rancho La Valencia, Inc. v. Aquaplex, Inc.*, 383 S.W.3d 150, 152 (Tex. 2012) (per curiam) (discussing Rule 44.1(b)).

For these reasons, we conclude that the probate court erred in granting Marcia's motion for no-evidence summary judgment and awarding damages on this theory of recovery and sustain Darrell's second issue.

### *Attorney's Fees*

Darrell also argues that if this Court reverses the summary judgment, that it also must reverse the award of attorney's fees. Marcia counters that this Court should affirm the award of attorney's fees even if we reverse the summary judgment because the Property Code allows a trial court to award attorney's fees to a non-prevailing party if the fees would be

14

"equitable and just." *See* Tex. Prop. Code § 114.064(a) ("In any proceeding under this code the court may make such award of costs and reasonable and necessary attorney's fees as may seem equitable and just."). But given this Court's disposition on appeal, the probate court may wish to reconsider its award of attorney's fees. On this basis, we also reverse the award of attorney's fees and remand to the probate court for reconsideration. *See Harbor Ventures, Inc. v. Dalton*, No. 03-10-00690-CV, 2012 Tex. App. LEXIS 4009, at *45–46 (Tex. App.—Austin May 18, 2012, pet. denied) (mem. op.) (reversing award of attorney's fees in light of disposition on appeal and explaining that substantial modification to judgment may affect whether attorney's fees are equitable and just and that trial court may want to exercise discretion differently in light of disposition); *Countrywide Home Loans v. Howard*, 240 S.W.3d 1, 7 (Tex. App.—Austin 2007, pet. denied) (reversing trial court's ruling regarding attorney's fees and remanding for further consideration when reversing summary judgment and noting that in light of court's disposition, trial court "may wish to reconsider its award of attorney's fees").

## CONCLUSION

For these reasons, we reverse the probate court's final summary judgment and remand the case to the probate court for further consideration.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Smith

Reversed and Remanded

Filed: November 4, 2022

15